H. REMINGTON & SON PULP & PAPER CO. v. CASWELL et al.

(Supreme Court, Appellate Division, Fourth Department. May 6, 1908.)

1. CORPORATIONS — UNAUTHORIZED ACTS OF DIRECTORS — RATIFICATION BY STOCKHOLDERS.

The stockholders of a corporation may ratify and affirm the unauthorized acts of its directors and officers, and, when they do so, their adoption of those acts is effective to bind the corporation, unless they offend against the public or the rights of creditors are involved.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1707–1719.]

2. SAME.

The interposition of the doctrine of ultra vires will not be permitted to enable a stockholder to disavow a transaction which he has affirmed, when it will operate unjustly.

3. SAME.

The directors of plaintiff corporation adopted a resolution authorizing the company to borrow for its business certain moneys on its notes, giving bonds therefor issued by it as collateral. The money was loaned by the treasurer of defendant corporation, but, instead of being used in plaintiff's business, it was used to pay certain notes held by defendant and its treasurer against an insolvent corporation, the stockholders whereof were also stockholders in plaintiff corporation. No consideration for the transaction moved to plaintiff, which was itself a creditor of the insolvent company. Thereafter the stockholders of plaintiff and the insolvent company, with knowledge of the facts, sold all the stock of both companies to one T., it being understood that the notes given defendant were to be in effect deducted from the purchase price. Held, that neither the stockholders nor T. could thereafter maintain an action in the name of plaintiff to compel a cancellation of the notes and return of the bonds on the ground that the transaction was unauthorized.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1707–1719.]

McLennan, P. J., dissenting in part.

Appeal from Trial Term, Jefferson County.

Action by the H. Remington & Son Pulp & Paper Company against Nelson R. Caswell and another. From a judgment dismissing the complaint on the merits on the report of a referee, and also from an order granting an extra allowance, plaintiff appeals. Judgment affirmed, and order granting allowance reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Henry Purcell and Elon R. Brown, for appellant.
Samuel Child, for respondents.

SPRING, J. The Watertown Paper Company, a domestic corporation, was organized prior to 1874 with a capital stock of $20,-

000 equally divided between Hiram Remington and his son Edward W.   This ownership continued until about the year 1886, when Hiram Remington distributed 80 shares of the stock owned by him equally among four of his daughters, and no further change occurred until the death of Hiram, March 23, 1905.   The plaintiff was organized as an allied and subsidiary corporation in 1887, also with a capital stock of $20,000, divided into shares of $100 each, of which said Hiram Remington owned 100 shares, his son Edward W. 95 shares, and Nellie, then the wife of the latter, 5 shares.   In 1902 the capital stock of the plaintiff was increased to $150,000.   Of this $22,000 were retained as treasury stock, while the balance, or $128,000, was distributed pro rata among the three stockholders, except that no new stock was issued to Nellie Remington, nor were her original 5 shares surrendered. On May 15, 1902, a resolution of the stockholders of the plaintiff was adopted authorizing the issue of $400,000 of bonds in sums of $500 each, bearing interest at 6 per cent.   Said bonds were to be secured by a mortgage upon the property of the company, and the avails were "to be used only for the enlargement and extension of the paper and pulp business of said company."   In compliance with such resolution, and in conformity with the consent of the stockholders of the company, duly made, the plaintiff executed its mortgage to trustees on May 15, 1902, and on the same day 800 of its bonds of $500 each were made and attested, payable to bearer and maturing in 20 years from their date, with interest coupons attached.   Only $8,000 of these bonds were sold, but others were used frequently for collateral security for debts and loans.   By the will of Hiram Remington the 640 shares of stock owned by him were divided as follows:   128 shares each to three daughters, Sophia, Mary, and Clara; a like number of shares to his son Frederick and his family; and also a similar number in trust to his daughter Mrs. Summerville and her children, with power of sale in the trustees in each instance.   Mary transferred 33 shares to Edward, who transferred 1 of them to his wife, Bertha. The remaining 32 shares, in place of the 5 shares held by Nellie Remington, the former wife of Edward, belonged to him, but were turned over to Nellie, who was still living, as collateral security for a note of $10,000 given by Edward to her in December, 1902. In addition to his interest in these 32 shares, Edward owned 640 shares of the stock.

The two connecting corporations occupied the same office, and the clerical business was transacted by the same clerks.   The plaintiff manufactured wood pulp, and nearly all of it was sold to the paper company.   The plaintiff had no bank account, but all the money received by either was deposited in the name of the paper company.   One company often indorsed for the other; and yet their business was kept distinct.   Two sets of books were used.   The price of the wood pulp sold to the paper company was fixed at the market price each month, and charged on the books of one company and credited on those of the other.   An inspection of the books would have disclosed the precise relation

which they held toward each other, and there was no confusion
in their accounts or in their dealings. Their corporate entities
and their property rights were maintained separately, notwith-
standing they had the same directors and substantially the same
stockholders. The plaintiff manufactured only one kind of raw
material used in the manufacture of paper, and that was practically
all purchased by the paper company; so there was no complexity
in its accounts or in its status generally. The business for a long
time was profitable. In the latter part of October the paper com-
pany, however, became insolvent. It owed the plaintiff over $50,-
000, the defendant, the Aldrich Paper Company on notes, some of
which were not then due, over $10,000, and also about $1,000 on
open account, and to the defendant Caswell, who was the treas-
urer of the Aldrich Company, $500 on notes which were indorsed
by the plaintiff. The directors of the plaintiff were Edward W.
Remington, his wife, Bertha, and Sophia Remington. On the
27th day of October, 1905, these directors adopted a resolution
authorizing the company "to borrow for the purposes of its busi-
ness" $11,500 on its notes, giving 92 of its bonds as collateral se-
curity, and Mr. Nims, the secretary of the company, was au-
thorized to execute and deliver such notes and pledge the bonds,
and the trustees under the mortgage were directed to deliver the
bonds to said Nims. Edward Remington on that day arranged
with Caswell, in the presence of Nims, that the notes would be
delivered to Caswell, who would furnish the money which was
to be used, not in the business of the plaintiff, but to pay the
Aldrich Company its obligations against the paper company, and
also the indebtedness of Caswell against that company, and directed
Nims to consummate this arrangement, which he did on the 30th
of October. Five notes of the plaintiff aggregating $11,500 were
delivered over to Caswell and the 92 bonds of $500 each as col-
lateral thereto, and this action is to compel the surrender and can-
cellation of the notes, and the transfer and delivery over of the
hypothecated bonds to the plaintiff. Subsequently the Aldrich
Company delivered to the Watertown Paper Company the notes
which were paid from the Caswell loan, and they are now in the
possession of the trustee of that company, which has been de-
clared a bankrupt. The entries of these transactions were made
upon the books of the two Remington companies. The moneys
were charged to the Watertown Paper Company on the books
of the plaintiff, and credited to the plaintiff on the books of the
paper company. Edward Remington was the general manager
and principal stockholder of these two Remington companies.
On the 27th of October, he as well as the Aldrich Company and
Caswell, knew that the Watertown Paper Company was unable
to pay its debts. The Aldrich Company had persistently and
fruitlessly attempted to collect its obligations as they matured
from time to time. It had no indebtedness against the plaintiff,
and yet by the transaction which was consummated, founded up-
on proper and innocent resolutions, the plaintiff became liable on
notes, the entire avails of which were used in paying certain debts

of the Watertown Paper Company, a hopelessly insolvent corporation. No consideration moved to the plaintiff. It was already a heavy creditor of the paper company. The object could not have been to bolster up and keep from failing the paper company. It received no cash to enable it to carry on, or to impart life to, its business. The only beneficiary of this unauthorized transaction was the Aldrich Company. The plaintiff concedes that it cannot recover against Caswell, for it was contingently liable to pay the obligations which he surrendered, and this is not disputed.

It is alleged in the answer that the stockholders of the plaintiff knew and acquiesced in this loan and the payment of the debts of the paper company to the Aldrich Company and Caswell. There is no evidence to support this allegation. Sophia and Bertha Remington were probably present at the meeting when the resolutions referred to were passed. They, however, gave no inkling of the transaction which was executed. There is nothing to indicate that the other stockholders, whose holdings of stock were considerable, had any intimation at that time of the scheme intended. Except for facts hereafter narrated, there would be no doubt of the right of the plaintiff to recover in this action. The transaction cannot bear the light. A large creditor of an insolvent corporation has obtained an unfair preference, and the plaintiff has become liable on notes which were without consideration and Edward Remington exceeded his authority in directing the accomplishment of the project.

On November 1st Edward Remington entered into an option agreement with John B. Taylor, whereby he agreed to sell at par his stock in the plaintiff company, including other shares specified therein; and in connection therewith to transfer all the stock owned by him in the Watertown Paper Company without further payment. Taylor caused the books of the company to be examined, and an itemized statement of its liabilities made by an expert accountant. That statement disclosed the notes of the defendant Caswell and the bonds pledged for their security. Taylor declined to exercise his option, but on November 14th Remington arranged to sell his stock, including that of his wife, the stock pledged to his former wife, and the 33 shares from his sister Mary, in all 673 shares, for $38,300, of which $10,000 were to be paid to the former wife in payment of her note against Edward, and which was secured by 32 shares of stock. Later Taylor purchased all the other shares of the stock at 51 cents on the dollar, and the shares of the Watertown Paper Company were transferred to him without any additional payment. All of these shares were transferred to him, except four shares, which were turned over to E. R. Brown, and a like number to G. H. Babcock, at the direction and for the benefit of Taylor to enable him to reorganize the directorate of the two companies, which he did. Taylor understood fully the indebtedness to Caswell on these notes and the transaction whereby the Aldrich Company had been paid the indebtedness which it held against the paper company. In the new agreement which he made whereby he acquired the stock these notes were taken into consideration, and in estimating the liabilities of the company he computed these obligations. The

property all through the negotiations was unvaryingly estimated to be worth $150,000, and its value in the purchase by Taylor was ascertained by deducting from that sum the amount of its debts, which included those due to Caswell, and apparently the claim against the paper company was not appraised at all.

On the 16th of November, 1905, at the instance of Taylor, a proceeding was commenced in the Supreme Court for the voluntary dissolution of the paper company. The petition, verified by Brown and Babcock, who, with Taylor, composed the directorate of the company, contained a schedule of the liabilities of the company, and which included the indebtedness to the plaintiff of $11,500 by reason of the payment of its notes to the defendants by money received from Caswell. A temporary receiver was appointed in that proceeding, and early in December in involuntary bankruptcy proceedings a trustee was appointed. In recognition of the validity of these notes to Caswell, Taylor, as treasurer of the plaintiff, presented and filed with the referee in bankruptcy a verified claim of its indebtedness against that company, which included the account of $11,500 by reason of the Caswell notes. This was presented to enable the plaintiff to participate in the distribution of the assets of the paper company. The notes which the Aldrich Company surrendered to the paper company were retained by it, and no offer to return them was ever made, and it was therefore deprived of the opportunity to present them as obligations against the bankrupt company. The referee's fiftieth finding of fact is as follows:

"That in the negotiations leading to the sales to Taylor as finally made the notes and pledge in controversy were known to all the parties, and the said notes were treated by all the parties as valid obligations against the plaintiff, and the amount thereof was taken into consideration and deducted from the value of the property in arriving at the price which was paid by Taylor for the stock."

I think this finding is sustained by the evidence. As already noted, several of the stockholders of the plaintiff did not know of the transaction with Caswell at the time it was completed, but they must have been apprised of it pending the negotiations with Taylor. The first proposition which was communicated to all these stockholders was to pay par for the stock, if the inventory justified it. The statement made by the accountant for Taylor compelled him to decline to exercise the privilege of purchase. In the subsequent negotiations, terminating in the sale, this statement was used as the basis of the estimates, and the indebtedness to Caswell was contained in it. The percentage paid was arrived at by deducting this item, among others, from the conceded value of the property, and all the parties were cognizant of the method adopted of ascertaining the actual value of the stock transferred. We have, therefore, a suit in equity by the plaintiff, a corporation whose property is in effect all owned by Taylor, repudiating a transaction the benefits of which have already accrued to him and the nature of which he fully comprehended when he acquired the stock. I assume, if Edward Remington had been the sole stockholder of the plaintiff at the time of the transaction with Caswell, he could not thereafter use the corporate name in an action for its disaffirmance. There

is no sanctity hedged about a corporation. If it resorts to a court of equity, it must appear that justice demands the relief which it seeks. The stockholders of a corporation may ratify and affirm the unauthorized acts of its directors and officers, and, when they do so, their adoption of these acts is effective to bind the corporation, unless they offend against the public, or the rights of creditors are impaired. Kent v. Quicksilver Mining Co., 78 N. Y. 159, 185 et seq.; Skinner v. Smith, 134 N. Y. 240, 249, 31 N. E. 911; Vought v. E. B. & L. Ass'n, 172 N. Y. 508, 517, 65 N. E. 496, 92 Am. St. Rep. 761; E. B. & L. Ass'n v. Williamson, 189 U. S. 122, 128, 23 Sup. Ct. 527, 47 L. Ed. 735; Bath Gaslight Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390, 36 L. R. A. 664. The general principle is well stated in 78 N. Y., supra, at page 185:

"In the application of the doctrine of ultra vires it is to be borne in mind that it has two phases—one where the public is concerned, one where the question is between the corporate body and the stockholders in it, or between it and its stockholders, and third parties dealing with it and through it with them. When the public is concerned to restrain a corporation within the limit of the power given to it by its charter, an assent by the stockholders to the use of unauthorized power by the corporate body will be of no avail. When it is a question of the right of a stockholder to restrain the corporate body within its express or incidental powers, the stockholder may in many cases be denied, on the ground of his express assent, or his intelligent, though tacit, consent to the corporate action. If there be a departure from statutory direction, which is to be considered merely a breach of trust to be restrained by a stockholder, it is pertinent to consider what has been his conduct in regard thereto. A corporation may do acts which affect the public to its harm, inasmuch as they are per se illegal or are malum prohibitum. Then no assent of stockholders can validate them. It may do acts not thus illegal, though there is want of power to do them, which affect only the interest of the stockholders. They may be made good by the assent of the stockholders, so that strangers to the stockholders dealing in good faith with the corporation will be protected in a reliance upon those acts."

It is not, therefore, very important whether the original transaction with Caswell was ultra vires. The interposition of that doctrine will not be permitted to enable a stockholder to disavow a transaction which he has affirmed, or when it will operate unjustly. Whitney Arms Co. v. Barlow et al., 63 N. Y. 62, 69 et seq., 20 Am. Rep. 504. When Taylor purchased the stock of these two corporations, the contract had been fully executed. The defendants had surrendered their notes. The transactions had been entered upon the books of the various companies. If any benefit is to inure to any one by requiring the surrender of these bonds and the cancellation of the notes, Taylor will be the sole beneficiary. His interest cannot be obscured because the corporation is the nominal plaintiff. He has been once benefited by this transaction, and ought not to be twice paid. The principle which should obtain is akin to that prevailing which estops a grantee to impeach the validity of a mortgage, the payment of which he has assumed as part of the purchase price of land. Hartley, Executor, etc., v. Harrison et al., 24 N. Y. 170; Freeman v. Auld, 44 N. Y. 50; Parkinson v. Sherman, 74 N. Y. 88, 30 Am. Rep. 268; Cottle v. County of Erie, 57 App. Div. 443, 449, 67 N. Y. Supp. 996, affirmed 173 N. Y. 591, 65 N. E. 1115. It is true that ordinarily whatever right of

action the transferror possesses passes to the transferee. In this instance the corporate entity remains unchanged, and Taylor, as already stated, ratified the transaction out of which the alleged cause of action arose. The stockholders who transferred their stock to Taylor could disavow or ratify the deal with Caswell. If they confirmed it, Taylor could not override their approval. When they dealt with Taylor, they permitted the notes of Caswell to be treated as obligations of the plaintiff, and the sale to Taylor was in confirmation of this indebtedness. This acquiescence on their part with the knowledge and approval of Taylor should forever set at rest his right to impeach the transaction. After all these stockholders had deliberately ratified the transaction, originally unauthorized though it was, they should not be permitted to use the corporate name to repudiate it. Taylor is in no better situation than they were. In fact, his equities are not on a parity with those of his transferrors, for he has been allowed by them the full benefit of this indebtedness, as already shown.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.

Order granting additional allowance reversed, with $10 costs. All concur, except McLENNAN, P. J., who votes for affirmance of the order.