## O. S. GOSS & CO. v. GOSS.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. CORPORATIONS (§ 316*)—OFFICERS—CONTRACTS—VALIDITY.

An agreement made by an officer of a corporation with himself, by which he derives a benefit, is voidable at the option of the corporation, regardless of whether the agreement was fair, but the corporation estops itself to complain by ratifying the transaction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1401–1415; Dec. Dig. § 316.*]

2. CORPORATIONS (§ 316*)—OFFICERS—CONTRACTS—VALIDITY—ESTOPPEL.

A corporation is estopped to compel a former president, who owned one half its stock, to account for funds drawn to reimburse him for use of his own automobile in the corporate business, where the transaction was ratified by the board permitting one who owned the other half of the stock to withdraw a like amount of funds.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1401–1415; Dec. Dig. § 316.*]

3. CORPORATIONS (§ 319*)—NATURE AS SEPARATE ENTITY.

To do justice, equity will disregard the fiction that a corporation is an entity distinct from one who owns substantially all its stock, as where accounting is sought by such a corporation against a former president in a matter as to which the present controlling stockholder is estopped.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 319.*]

Appeal from Judgment on Report of Referee.

Action by C. S. Goss & Co. against Clayton S. Goss. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

See, also, 130 N. Y. Supp. 1108, 1112.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Frank H. Platt, for appellant.
Henry Escher, Jr., for respondent.

McLAUGHLIN, J. [1, 2] Action for an accounting by a corporation against its former president. The plaintiff, a domestic corporation, was organized in July, 1904, for the purpose of dealing in building materials, and from the time of its incorporation until June, 1907, the defendant was its president and the owner of one half its capital stock. He also was the active manager of all its affairs. The other half of the capital stock was owned by one Foster, who was the treas-

---

urer of the company. Two shares, however, were nominally held by one Kingsley for the purpose of qualifying him to act as a director. The board of directors consisted of the defendant, Foster, and Kingsley, none of whom, except the defendant, took any active part in the management of the corporate business. Foster and Kingsley attended the directors' meetings, but outside of that only occasionally went to the office, or had anything to do with the business.

It seems that in May, 1906, the defendant, deeming it necessary for the economical and proper management of the corporation's business, purchased with its funds a small automobile, for which he paid $800, and freight charges amounting to some $29 more. He had not prior to that time been expressly authorized to make the purchase, and, so far as appears, had not mentioned the subject of the purchase to either of the other directors. The referee, however, to whom was referred the issues to hear and determine, found as a fact, and the evidence is sufficient to sustain the finding, that the defendant had ample authority by virtue of his position as president, and his act was a reasonable and proper one in view of all the circumstances. Soon after the purchase, the defendant found that the automobile did not have sufficient power for the purpose intended, and that a larger machine was necessary. He thereupon, not deeming it advisable to subject the corporation to the expense of procuring and maintaining a higher priced car, decided to buy one for himself and charge the corporation a reasonable amount for such use as he might make of it in the corporate business. Some three weeks after the purchase of the first machine he purchased a new one, of the same make, paying therefor $3,000, which payment was made by giving his own check for $2,200, and turning in the small machine for the same price ($800) which he had paid for it. He kept the new machine for about eight months, using it week days in the company's business, and at night and on holidays for his own purposes. During that period he expended $420.89 for repairs and $600 for chauffeur's wages. At the close of the fiscal year, January 31, 1907, in order to settle his accounts with the corporation, he paid to it $300 as a reimbursement for the small machine which he had purchased for it, and which he had given in part payment of the larger machine. The remaining $500 of the purchase price of the car the defendant paid to the company by charging on its books $500 which he had credited to himself in compensation for the use of the machine in the corporate business during the preceding eight months. Prior to January 31, 1907, the defendant had paid out of the funds of the corporation $324.23 for storage, etc., of the car, besides what he paid of his own money. The eight months use of the machine, therefore, cost the company $853.23, including the freight charges on the small car. None of these transactions were prior to this time expressly authorized by the board of directors, nor, in fact, so far as appears, were they known to the other directors until after the disbursements had been made. No attempt, however, was made at concealment. The disbursements were charged upon the books of the company and the referee found that same were made in entire good faith. Some time after January 31, 1907, a disagreement

having arisen between the defendant and Foster, the latter discovered the transaction, and then, for the first time, objected to it; and subsequently, in May, 1907, the board of directors, at a meeting duly called, at which all of the directors were present, the transaction was fully discussed, and, in order to satisfy Foster, a resolution was passed, all of the directors voting therefor, permitting him to draw from the assets of the company an amount equal to what had been credited to the defendant for the storage and use of his machine. The resolution thus passed read as follows:

"On motion duly made and seconded it was resolved that Mr. Foster, treasurer, be and he hereby is authorized to use his own motor car in the interests of the company's business, when and for such period as he may see fit, and that the company shall pay to him $853.23 to apply on its maintenance."

Something like a month after the resolution was passed, Foster purchased from the defendant his entire interest in the corporation, and since then has been the substantial owner of all of the corporation. Foster did not see fit to withdraw from the assets of the corporation the amount mentioned in the resolution, but, after he became the owner, instituted this action to compel the defendant to account for the value of the small automobile and the payment out of the corporate funds for the storage, etc., of the large machine. The referee directed judgment in favor of the plaintiff for these amounts, less $300, which the defendant had theretofore paid to the company. It is from this judgment that the defendant appeals.

The rule seems to be well settled that an agreement made by an officer of a corporation with himself, by which he derives a benefit, is voidable at the option of the corporation (Skinner v. Smith, 134 N. Y. 240, 31 N. E. 911; Davids v. Davids, 135 App. Div. 206, 120 N. Y. Supp. 350), and this rule seems to be applicable irrespective of whether the agreement was fair to the corporation or not (Munson v. S. G. & C. R. Co., 103 N. Y. 59, 8 N. E. 355; Jacobson v. Brooklyn Lumber Co., 184 N. Y. 152, 76 N. E. 1075). But this rule, like every other, has an exception. The stockholders of a corporation may, with full knowledge of all the facts, ratify an unauthorized act of an officer, and, if that be done, then the corporation is thereafter estopped from claiming that the act was invalid. First National Bank v. Commercial Travelers' Ass'n, 108 App. Div. 78, 95 N. Y. Supp. 454; Kent v. Quicksilver Mining Co., 78 N. Y. 159; Martin v. N. F. P. Mfg. Co., 122 N. Y. 165, 25 N. E. 303. Assuming that the defendant's arrangement, whereby he used his own machine in the company's business and reimbursed himself out of the corporate assets, was unwarranted, when all of the facts were laid before all of the stockholders of the corporation, they could ratify such act, and this they did when they passed the resolution permitting Foster, who owned the other half of the stock, to withdraw a similar amount from the corporate assets. All of the stockholders, including Foster, having voted for the resolution, it is difficult to see upon what principle of equity he could thereafter repudiate his act. If the rights of creditors were in any way involved, then another question would be presented, but here the rights of creditors are in no way involved.

The defendant and Foster, as we have seen, owned all the stock, and therefore they occupied towards each other, there being no debts, substantially the relation of partners. No reason whatever, as it seems to me, can be suggested, after the whole matter had been adjusted in the manner set out in the resolution, why the only parties interested should not be bound by it. Not only this, but after the passage of the resolution, Foster, with full knowledge of what had been done, purchased from the defendant his interest in the corporation, and he thereupon took the same subject to the resolution which had been previously passed, and for which he himself voted. It is doubtless true that in fixing the price which he paid the defendant for his stock he took into account the fact that he had a right to draw from the assets an amount equal to what the defendant had theretofore drawn.

[3] It is suggested that the corporation itself was a separate entity, and therefore the rights of defendant and Foster ought not to be considered. Theoretically this may be true, but, when a court of equity is endeavoring to adjust the rights between the parties, it looks at the merits rather than at the form, and to that end it has been frequently held that it will disregard the fiction of a separate entity of a corporation where justice requires it should be done. People v. North River Sugar Refining Co., 121 N. Y. 582, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843; Anthony v. American Glucose Co., 146 N. Y. 407, 41 N. E. 23; Remington v. Caswell, 126 App. Div. 142, 110 N. Y. Supp. 556. What was said in Remington v. Caswell, supra, is quite pertinent here. "We have, therefore," says the court, "a suit in equity by the plaintiff, a corporation whose property is, in effect, all owned by Taylor, repudiating a transaction the benefits of which have already accrued to him and the nature of which he fully comprehended when he acquired the stock. There is no sanctity hedged about a corporation. If it resorts to a court of equity, it must appear that justice demands the relief which it seeks. The stockholders of a corporation may ratify and affirm the unauthorized acts of its directors and officers, and, when they do so, their adoption of these acts is effective to bind the corporation, unless they offend against the public or the rights of creditors are impaired." See, also, Cook on Corporations, § 664; Groh's Sons v. Groh, 80 App. Div. 85, 80 N. Y. Supp. 438.

It follows that the judgment appealed from is reversed, and a new trial ordered before another referee, with costs to appellant to abide event of the action. The disposition thus made of the judgment renders it unnecessary to pass upon the order appealed from. All concur.