MARY MALE, Plaintiff, *v.* NATIONAL PURE WATER COMPANY OF BUFFALO, INC., Defendant.*

Supreme Court, Erie County, July 16, 1940.

---

* Affd., 261 App. Div. 1050.

*Joseph P. Burke* and *John Swerdloff*, for the plaintiff.

*John E. Barry*, for the defendant.

HARRY L. TAYLOR, Official Referee. The action is to foreclose a chattel mortgage covering indebtedness up to $29,000. The mortgage was executed November 15, 1934, by defendant and delivered to plaintiff as mortgagee. A resolution and consent of the corporation dated May 14, 1935, were presented in evidence. These documents in terms " ratified, approved and confirmed " the prior execution and delivery of the chattel mortgage in suit. This mortgage was executed by Thomas Male as vice-president. He had authority to execute the mortgage " in the absence or disability of the president." (By-laws, art. IV [b].) Neither of these documents has been filed in the county clerk's office. The non-filing is probably not of serious import inasmuch as all the stockholders knew about the execution of the mortgage. (*Black* v. *Ellis*, 129 App. Div. 140; affd., 197 N. Y. 402.)

Defendant in its answer makes denials and attacks the validity of the mortgage. It also counterclaims for losses alleged to have accrued to defendant through the neglect and malfeasance of plaintiff in co-operation with her son Thomas. The testimony adduced before me indicates co-operation between the plaintiff and her son Thomas and that as between Veronica Male, former wife of Thomas, and her husband and mother-in-law, there is hostility. Veronica Male is the representative of the interests of the corporation defendant in the instant trial.

In 1923, to settle a lawsuit pending among defendant, Thomas Male and one Richard L. Slosson, then a major stockholder, the defendant Slosson's stock was purchased for $20,000, $7,500 in cash paid by the corporate defendant and $12,500 by a mortgage on this plaintiff's home in Buffalo, this mortgage being known as the " Slosson mortgage." For eight years the corporation made all payments, principal and interest, on this mortgage.

Pursuant to a stipulation entered into before me it appears that after the purchase of the Slosson stock and a redistribution of the

shares, Thomas Male owned 183 shares, Veronica Male 76 shares and Mary Male 101 shares. Mary Male was elected president, Veronica vice-president and Thomas secretary and treasurer, and all were made directors. From 1923 to March 28, 1934, either the plaintiff, Thomas or Veronica had authority to sign corporate checks without counter-signature. From January 1, 1935, to along in 1936, the bank's auditor, Mr. Volker, countersigned checks with Veronica Male. Then for some one and one-half months plaintiff alone signed checks. Afterward at the request of the M. & T. Trust Company, plaintiff and Veronica Male signed the checks. It also appears that in 1928 the defendant procured a loan of $15,000 from the Frontier National Bank, secured by an instrument of continuing guaranty and a collateral mortgage upon four pieces of real estate owned by plaintiff. On July 1, 1932, the Bank of East Aurora certified that there was due upon the Slosson mortgage the sum of $9,000; in August, 1934, this mortgage was in default and the Bank of East Aurora threatened foreclosure. Thereupon, this mortgage was refinanced by funds obtained from the Home Owners Loan Corporation in the amount of $10,980, this being secured by a mortgage executed by plaintiff and covering her real property. Plaintiff made some payments upon this latter mortgage and the defendant paid nothing upon it. In 1929 the Liberty Bank of Buffalo became the owner of the corporation's note and the mortgage given to the Frontier National Bank as above stated, together with the collateral guaranties and pledges of the plaintiff. I should say that the chattel mortgage in suit has been renewed each year and the renewals filed. It was assigned at one time to the Liberty Bank of Buffalo and then reassigned to the plaintiff upon payment of the defendant's note and additional charges. The final payment was made on this note in January, 1939, and $2,340.88 of plaintiff's money was used in making that payment. The bank also collected $320.64 from plaintiff for receiver's fees and costs. In October, 1938, an action was commenced to foreclose the Home Owners Loan mortgage. In January, 1939, a judgment of foreclosure and sale was entered and in February, 1939, plaintiff's real property was sold under this foreclosure, the amount found due being $14,979.82. No deficiency judgment was entered against plaintiff. In June, 1939, plaintiff made a written demand upon defendant for payment under the $29,000 chattel mortgage in suit and in December, 1939, this action was commenced.

Either by stipulation or satisfactory proof presented to me, it further appears that at the end of 1934 defendant's book liabilities exceeded its assets by $996.58 and that the corporation had other liabilities not on the books, amounting to $5,447.05, not including

plaintiff's claims. It also appears that when the chattel mortgage in suit was executed and delivered, it was not issued upon " payment of * * * full value * * * in cash " (Stock Corp. Law, § 15) nor in consideration of a present transfer of cash or property.

Plaintiff claims that only a creditor or a non-consenting stockholder may invoke section 15 of the Stock Corporation Law. This broad contention is inaccurate. A corporation itself may resort to the section as a defense as well as in an action brought in its behalf. (*Catholic Foreign Mission Society of America* v. *Oussani,* 215 N. Y. 1, 9.) May this corporation be heard to defend under section 15 of the Stock Corporation Law, when all its stockholders have voluntarily ratified the execution and delivery of the chattel mortgage after but not before its execution and delivery? This brings me to a consideration of the full meaning and contemplation of section 15. The section comes down from section 66 of the former Stock Corporation Law, section 66 being derived from old section 48 (Laws of 1890, chap. 564.) Section 15 of the Stock Corporation Law and sections 60 and 61 of the General Corporation Law are of wide application with respect to the operations of stock corporations. (*Whalen* v. *Strong,* 230 App. Div. 617, 619, 620; *Shepard Co.* v. *Taylor Publishing Co.,* 234 N. Y. 465, 468.) Their general intendment is to prevent stock corporations, creatures of our statutes, from being so handled as to unfairly jeopardize the property rights of their creditors and stockholders. (*Munzinger* v. *United Press,* 52 App. Div. 338, 342; *Moak* v. *Vet,* 221 id. 289.) As section 15 reads, " every transfer or assignment or other act done in violation of the * * * section shall be void," not voidable. But void as to whom? The obvious answer is that such an act is void only as to financially interested parties whose rights have been or will be wrongfully invaded, whether they be stockholders or creditors or the general public. There is no doubt that section 15 does not prevent a corporation from paying or securing its debts when it is expecting to continue its business. (*O'Brien* v. *East River Bridge Co.,* 161 N. Y. 539; *Matter of Stern & Co.,* 54 F. [2d] 478.) Here no creditor has intervened or seems to be interested. The only stockholder who is here presenting claims in behalf of the corporation has been actively connected with the management of the business of the corporation for years. With open eyes and a full understanding, not only of the previous transactions of the defendant corporation for a long period, but concededly with full appreciation of the grounds for objection which she now raises, Veronica Male voluntarily participated in the execution of Exhibits 2 and 3 on May 14, 1935 (the resolutions and the consent to the execution and delivery of the chattel mort-

gage) " pursuant to § 16 of the Stock Corporation Law." Under the circumstances presented, the ratification was timely and fully operative as to the parties to this action. (*McCarty* v. *Nostrand Lumber Co., Inc., No. 2*, 232 App. Div. 63; *Skinner* v. *Smith*, 134 N. Y. 240; *Remington & Son Pulp & Paper Co.* v. *Caswell*, 126 App. Div 142.)

I am unable to see that section 15 of the Stock Corporation Law or subdivision 5 of section 60 and section 61 of the General Corporation Law furnish any remedy to defendant. I do not find that the rights of any stockholder or creditor or of the general public have been violated.

The counterclaim should be dismissed and plaintiff should have the relief demanded in her complaint, with costs. A formal decision and judgment should be presented to me for my signature.