■ GEORGE J. CRAVEN, as a Director of the DEAN PAVING CORPORATION, Respondent, v. JOSEPH A. GAZZA et al., Appellants. (Action No. 1.) JOSEPH A. GAZZA, as a Stockholder and on Behalf of DEAN PAVING CORPORATION, Appellant, v. GEORGE J. CRAVEN et al., Respondents. (Action No. 2.) — In consolidated actions (designated as Actions Nos. 1 and 2) in which, as against the individual defendants named in each action, the respective complaints charged (in essence) breaches of fiduciary duties with respect to the use and transfer of assets owned by Dean Paving Corporation (hereafter called "Dean"), all the defendants in Action No. 1 and the plaintiff in Action No. 2 appeal from an interlocutory judgment of the Supreme Court, Queens County, entered November 21, 1962 on the court's decisions after a nonjury trial, in favor of the corporate plaintiff Dean in Action No. 1 to the extent hereafter indicated, and dismissing the complaint in Action No. 2. Pursuant to a stockholders' agreement dated April 2, 1956, between: (a) Joseph A. Gazza, who is a defendant in Action No. 1 and the plaintiff in Action No. 2, and (b) George J. Craven and Harold J. Craven, who are defendants in Action No. 2, Gazza became the president and a director of Dean and the owner of 40% of its stock, and the Cravens became, respectively, its vice-president and secretary-treasurer and the owners of the remaining 60% of its stock, as well as directors. The Huntington Utilities Fuel Corp. (hereafter called "Hunting-

ton "), a defendant in Action No. 1, is a corporation in which Gazza's mother owns all the stock and in which he was a director and the secretary. In Action No. 1, brought by George J. Craven as Dean's director, the amended complaint alleged: (1) that the defendant Gazza, purportedly acting as Dean's president, misappropriated and wasted certain of its machinery by executing and delivering to Huntington an unauthorized and invalid confession of judgment for $29,857.47 against Dean, and by causing such confession to be filed and judgment to be entered thereon; and (2) that, upon a subsequent Sheriff's execution sale on the judgment, Gazza and Huntington acquired title to the machinery upon a bid of $4,000 although it was worth more than $75,000. The complaint prayed for an accounting by the defendant Gazza, and for other and further relief. The defendants Gazza and Huntington in their answers pleaded various defenses besides a general denial; Gazza also pleaded seven counterclaims. As to Action No. 1, the judgment directed: (1) that the defenses and counterclaims be dismissed for legal insufficiency and on the merits; (2) that the corporate plaintiff Dean recover from the defendant Gazza such amount as may be established by proof on an accounting; (3) that the corporate plaintiff Dean recover from the defendant Huntington such amount as may be established by proof on an accounting, after crediting Huntington, by way of offset, with the amount owed to it for the reasonable value of repairs of equipment, services, rentals and supplies furnished by it to Dean; (4) that the confession of judgment, the judgment entered thereon, and all proceedings taken thereunder are null and void; (5) that the defendants Gazza and Huntington return Dean's properties (described in the amended pleadings) to it, together with all moneys and other things of value which, since April 2, 1956, they received from Dean as the result of the execution and sale held pursuant to the confession of judgment, or, in the alternative, that said defendants pay the reasonable value thereof as of the date of levy as well as any damage that may have been sustained by Dean and to which it may be entitled as a result of their conduct, including such reasonable expenses and counsel fees as may be authorized by law; (6) that said defendants serve and file a verified accounting of all such properties, money and other things of value so received by them, setting forth what property, if any, has been disposed of since such execution and sale and the circumstances thereof, and describing the said claimed repairs for equipment, services, rentals and supplies furnished to Dean, and the claimed reasonable value thereof; and (7) that any issues arising on the objections to such accounting be tried before a Special Referee designated to hear and report on all such matters. In Action No. 2, brought by Gazza as Dean's stockholder, the complaint alleged: (a) that the defendants Craven, by wrongful use as collateral of Dean's property and assets, induced various creditors to lend moneys to Dean, which the Cravens converted to their own use; and (b) that the Cravens breached the stockholders' agreement and were guilty of divers acts of mismanagement, including the commencement of Action No. 1. The relief sought was: (1) an injunction against the prosecution of Action No. 1; (2) an accounting by the individual defendants, the Cravens, of Dean's affairs; and (3) damages of $150,000. In their answer, the Cravens pleaded, besides a general denial, the defense that Action No. 1 constituted another action pending between the same parties on the same issues. The judgment dismissed on the merits the complaint in Action No. 2, and awarded costs, disbursements, expenses and counsel fees to the defendants Craven. Interlocutory judgment modified on the law and the facts as follows: (1) By striking out from the first decretal paragraph the provision awarding costs to the plaintiff in Action No. 1 upon the dismissal of the defendants'

counterclaims therein, and by substituting therefor a provision directing that such dismissal is without costs; (2) By striking out the fourth decretal paragraph dismissing the complaint in Action No. 2 and awarding costs, disbursements, expenses and counsel fees to the defendants Craven in said action; (3) By substituting for said fourth paragraph the following provisions: (a) a provision directing that with respect to Action No. 2, the defendants Craven be directed to account for all their personal use of the corporate property and credit of Dean as alleged in the complaint in said action, and to pay Dean the amount found to be due by reason of such use; (b) a provision directing that such accounting be joined and consolidated with the accounting now pending before the Special Referee with respect to Action No. 1; and (c) a provision amending the title of Action No. 2 and the allegations of the complaint therein so as to show Gazza's status to be that of a party plaintiff suing as a director instead of as a stockholder of Dean, and so as to show the Cravens' status to be that of parties defendants being sued as directors of Dean instead of individually as presently set forth; and (4) By adding a decretal paragraph directing that on the accounting: (a) Dean shall be charged with the amount of the liens extant on the personal property transferred to it on April 2, 1956 by Huntington, as fixed by the agreements of Gazza and the Cravens consummated on such date; (b) all the parties shall compute their respective debits and credits as of April 2, 1956, in accordance with the provisions contained in the said agreements; (c) Gazza and Huntington, in the event that they shall have failed to return the items of property mentioned, are specifically directed to embrace in their account not only the repairs, services, rentals and supplies furnished to Dean already mentioned in the judgment, but also the reasonable value of their own use or of the use by any other person or other corporations of such equipment; and (d) that all the parties to both actions shall also account to Dean for the profits, if any, derived by them from their personal use of its equipment and credit, or derived by them from any other use of its equipment and credit which was not a proper and authorized corporate use for its benefit. As so modified, the judgment is affirmed, without costs to any party as against the other. Findings of fact which may be inconsistent herewith are reversed, and new findings are made as indicated herein. Within 30 days after entry of the order hereon each party is directed to file and serve a further verified account in accordance with this decision; and within 10 days after the receipt of such account each party may serve and file verified objections to the account of any other party. In our opinion, Action No. 2 was improperly dismissed since the proof established that the defendants Craven, equally with the defendant Gazza in Action No. 1, were guilty of improprieties in dealing with the corporate credit and assets of Dean. If any technical difficulty ensued from the title of Action No. 2 or the narrow compass of the allegations of the complaint in seeking personal relief against the individual defendants therein named, the trial court, sitting as a court of equity, should have held the individuals accountable (*Goss & Co.* v. *Goss*, 147 App. Div. 698, 702; *Meinhard* v. *Salmon*, 249 N. Y. 458, 463–464), and should further have held that in equity the action was to be deemed essentially one for the benefit of the corporation (*Koral* v. *Savory Inc.*, 276 N. Y. 215, 217–219). This view seems particularly applicable at bar where the court, on consent, granted a motion to conform the pleadings to the proof, and where the court had allowed the liberal introduction of proof varying the pleadings (cf. *Gillies* v. *Manhattan Beach Improvement Co.*, 147 N. Y. 420, 423–424). With the technicalities thus corrected or surmounted, Gazza could well have been deemed substantively to be one director suing others for their breaches of fiduciary

duties owed by them to the corporation on causes of action belonging to the corporation (*Tenney* v. *Rosenthal*, 6 N Y 2d 204, 208). In view of the fact that both sets of stockholders, minority and majority, were guilty of improprieties, neither should receive costs, attorneys' fees or expenses (*Diamond* v. *Diamond*, 307 N. Y. 263). It is also our opinion that the ancillary or supplemental accounting should proceed in accordance with the accounting as originally directed and in accordance with the modifications of the interlocutory judgment above set forth, to the end that the corporation Dean be made whole as a consequence of the acts of both majority and minority stockholders dating back to the inception of their relationship on April 2, 1956. On that date the individual stockholders began their relationship on the informal basis of treating as their own personal belongings the property and assets which belonged to the corporation; and this practice of utilizing the corporation's property for their own individual purposes continued without due regard to the corporate entity or ownership. There is no basis for the learned Trial Justice's conclusion that the acts of the majority worked no lasting damage to the corporation. On the contrary, we find as a fact that some of the corporate obligations incurred through their acts remained outstanding as of the date of trial. That these might be of relatively "little value" is of no moment. "Such a calculus of probabilities is beyond the science of the chancery" (*Meinhard* v. *Salmon, supre,* 249 N. Y. 458, 465), and should have been left for full development on the accounting directed by the court. We also find that the weight of the evidence established that Dean was to pay the outstanding liens on the equipment transferred to it on April 2, 1956 by Huntington—the corporate entity for which Gazza acted as alter ego. Beldock, P. J., Ughetta, Hill, Rabin and Hopkins, JJ., concur. [36 Misc 2d 493.]