COTTLE et al. v. BOARD OF SUP'RS OF ERIE COUNTY et al.

(Supreme Court, Appellate Division, Fourth Department. January 8, 1901.)

JUDICIAL SALES — SALE SUBJECT TO TAXES—ESTOPPEL TO QUESTION VALIDITY OF TAXES.

Where realty is sold under a judgment directing sale subject to all taxes and assessments which have become liens subsequent to a certain date, the purchaser in an action against the county to compel the determination of a claim to the realty for taxes becoming liens on the premises subsequently to such date is estopped from questioning their validity.

Spring, J., dissenting.

Appeal from special term, Erie county.

Action by Octavius O. Cottle and another against the board of supervisors of Erie county and another. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

This action, which was commenced on the 4th day of January, 1899, was brought under section 1638 of the Code of Civil Procedure to compel the determination of a claim to real property. There is little, if any, dispute respecting the facts, which, briefly stated, are as follows: On the 29th day of January, 1876, one Charles T. Cromwell conveyed a lot of land situate on the north side of Carroll street, in the city of Buffalo, of which he was then the owner, to one John J. P. Read. The land continued in the ownership of Mr. Read until about the year 1883, when the New York, West Shore & Buffalo Railway Company began condemnation proceedings to acquire title thereto. Such action was taken in this proceeding that commissioners of appraisal were appointed, who in due time made their report, by which they awarded to the owner, Read, the sum of $14,500 as compensation for his land; and their report was subsequently duly confirmed, the order of confirmation providing that of the amount awarded the sum of $12,556.98 should be paid to the owner, and the remainder deposited in bank to protect the city of Buffalo and the county of Erie against liens which they claimed to have against the property for unpaid taxes. This order was duly entered, and, after having been registered and stamped at the office of the assessors of the city of Buffalo, pursuant to the requirements of the city charter, it was duly recorded in the office of the clerk of Erie county on the 23d day of February, 1884, in Liber 448 of Deeds, at page 464. Thereafter the West Shore Railway Company deposited in bank the sum of $1,943.02 to protect the class of liens above mentioned, but it omitted to pay to Read the sum of $12,556.98, or any part thereof. By reason of such omission, and on or about the 13th day of July, 1885, the railway company having in the meantime gone into the hands of receivers, Read brought an action in the supreme court to foreclose the receivers and the company from all right, title, and interest in and to the property sought to be acquired. In due course of time a judgment was rendered in such action in favor of Read, which, among other things, adjudged that the railway company was indebted to him in the sum of $13,139.59, and that such sum was a lien upon the land in question. The judgment also directed that the defendants might pay the above amount to Read within four weeks from its date, and that, upon such payment being made, Read should execute a conveyance of the property to them; but, in the event of a failure to make such payment, the property should be sold at public auction, and, if it brought more than enough to satisfy the amount awarded, the surplus should be paid to the railway company, but, if it brought less, the plaintiff should have judgment against the railway company for the deficiency. Read appealed from some of the provisions of this judgment, which was subsequently affirmed by this court. See 27 App. Div. 604, 50 N. Y. Supp. 1008. But before the determination of such appeal Read died, leaving a will, wherein he devised whatever interest he had in the real property in question to the plaintiffs herein, Octavius O. Cottle and Clayton L. Hill, and named them as his executors. The West Shore Railway Company and its receivers omitted to avail themselves of the privilege given them in the judgment above mentioned to pay the plaintiff's claim within the time therein specified, in consequence of which the property was sold pursuant to such judgment upon the 16th day of November, 1898, and was purchased by the plaintiffs herein for the sum of $1,000, and a deficiency judgment of $22,220 was entered in their favor, as executors, against the New York, West Shore & Buffalo Railway Company. The judgment in pursuance of which such premises were sold contained the following provision: "The sale directed by this judgment is to be made subject to all taxes and assessments which have become liens subsequent to February 21, 1884, and no part of the moneys arising on the sale is to be applied to the payment of those or any prior taxes or assessments, or to redeem the property from any sales for taxes or assessments." It is conceded that none of the purchase moneys were devoted to the payment of taxes, although at the time of the sale the county taxes were unpaid upon the property for at least 15 years,

and the city taxes for about 6 years. The referee's deed to the plaintiffs bears date December 27, 1898, and was delivered to the plaintiffs on or about that day. At the time of the commencement of this action the defendant Thomas Cary was the holder of five certificates of sale purporting to have been executed pursuant to sales made in the years 1890 to 1895, inclusive, for nonpayment of county taxes levied upon the premises in question for the years 1888 to 1893, inclusive, and such certificates amounted in the aggregate to the sum of $132.89, in addition to the expenses of the several sales, and the interest on the amount of such sales from the dates thereof, respectively, at the rate of 12 per centum per annum. The defendant Cary was also the holder of certificates of sale of the same premises executed pursuant to sales made in the years 1893 to 1897, inclusive, for the general city taxes for the city of Buffalo, together with local assessments levied and assessed thereon in the years 1892 to 1896, inclusive. It further appears that at the time of the commencement of this action the defendant the county of Erie claimed to be the owner of liens and incumbrances upon the premises in question amounting to upwards of $250, arising out of sales for taxes for various years levied thereon by the board of supervisors of Erie county, and sold by the treasurer of that county for nonpayment thereof. It was also made to appear that the plaintiffs had been in possession of the premises mentioned in the complaint for more than a year next preceding the commencement of this action, claiming to be the owners thereof in fee, and that their predecessors in title had been in possession of the same premises continuously for more than 50 years prior thereto; that there was not delivered to the clerk of the board of supervisors in any year for which any of the taxes above mentioned were levied or assessed any assessment roll having any oath of the assessors, or any of them, written or printed thereon, or any oath certified by any officer authorized by law to administer oaths; that none of the assessments except those made in 1882 and 1883 were made to an owner or occupant of the premises, and that the tax rolls for those two years were not certified in any manner.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Charles Diebold, Jr., for appellant Erie county.
Albert H. Jackson, for appellant Cary.
Octavius O. Cottle, for respondents.

ADAMS, P. J. Upon the facts as above stated the trial court found as conclusions of law: (1) "That none of said assessment rolls were valid or sufficient to confer jurisdiction to levy any taxes or assessments;" and (2) "that all of said taxes and sales and certificates of sale are null and void,"—which conclusions were obviously reached upon the theory—First, that under the charter of the city of Buffalo, which requires all lands to be assessed as resident lands (Laws 1891, c. 105, § 138), the premises in question should have been assessed to their real owner or occupant (1 Rev. St. pt. 1, tit. 2, art. 1; Zink v. McManus, 49 Hun, 583, 3 N. Y. Supp. 487; Cromwell v. MacLean, 123 N. Y. 474, 25 N. E. 932), and that, inasmuch as they were not thus assessed, the assessment was absolutely void (Whitney v. Thomas, 23 N. Y. 281); and, second, that the assessment rolls were void because not certified in accordance with the requirements of the statute (Laws 1891, c. 105, §§ 134, 140; People v. Suffern, 68 N. Y. 321). It is undoubtedly the rule that, where lands are taken under statutory authority, and in derogation of common-law rights, every requisite of the statute which is in any wise beneficial to the owner must be literally fulfilled. Newell v. Wheeler, 48 N. Y. 486; People

v. Hagadorn, 104 N. Y. 516, 10 N. E. 891.   And we are not prepared to say that the application of this rule to the facts of this case, but for one serious obstacle, to which we shall presently direct our attention, would not fully warrant the conclusion reached by the learned trial court.   At all events, such was apparently the view taken by the legal advisers of the county and city, for it seems that since the commencement of this action the aid of the state legislature has been invoked to legalize and confirm the very acts and irregularities of the assessors of the city and the supervisors of the county out of which this controversy arose.   Laws 1900, c. 773.   We do not deem it necessary, however, to discuss or determine the question to which we have just adverted, inasmuch as we have reached the conclusion that, even conceding that the plaintiffs are entirely right in their contention, the judgment appealed from must be reversed.   The plaintiffs, in their complaint, rest their cause of action and their prayer for relief upon the judgment which Read recovered in his action against the West Shore Railway Company.   They allege "that pursuant to said judgment" the premises in question were sold by a referee, and "that pursuant to said judgment and sale a deed of conveyance was duly executed and delivered by said referee to the plaintiffs"; that thereby the title conveyed by Cromwell to Read became vested in the plaintiffs, "who are now in actual possession of said premises, claiming an estate in fee therein through the conveyance above mentioned."   No reference is made in the complaint to a title in the plaintiffs derived from any other source, and it follows that the right which they are now seeking to enforce must necessarily have originated in such judgment and the deed executed in pursuance thereof.   This being the case, it is plain that the plaintiffs took only such title as the judgment awarded, and also took it subject to all the conditions and burdens which the judgment imposed.   By reference to this judgment it will be observed that among its most important provisions is the one imposing certain conditions, which have been quoted in the preliminary statement of facts; and the proposition seems too plain for discussion that, if the plaintiffs took their deed pursuant to this judgment, whatever title they acquired thereby became subject to the very taxes and assessments in virtue of which the premises were subsequently sold to these defendants.   Or, in other words, that by taking title "subject to all taxes and assessments which have become liens subsequent to February 21, 1884," they recognized the validity of the same taxes and assessments which they are now seeking to have declared void.   In these circumstances we do not see why the doctrine of estoppel ought not to be enforced with some degree of strictness; for, having purchased a valuable piece of property, which had been appraised at $14,500, for the nominal sum of $1,000, it would now be highly inequitable to allow the plaintiffs to violate the conditions upon which they purchased the same, even if the taxes and assessments subject to which the sale was made were concededly invalid.   This is no new doctrine.   It is simply the application of a very old principle to a somewhat peculiar state of facts.   As long ago as 1852 it was held by the court of appeals that the purchaser

of an equity of redemption at a foreclosure sale under a junior mortgage subject to the lien of a prior mortgage could not set up the defense of usury against such prior mortgage, because it would be releasing the land from an incumbrance which the grantee had expressly agreed it should be subject to, and therefore contrary to equity. Sands v. Church, 6 N. Y. 347. Subsequently, in Hartley v. Harrison, 24 N. Y. 170, it was said that:

"The law is well settled in this state that the purchaser who takes a conveyance of the premises from the mortgagor subject to the lien and payment of a mortgage cannot set up the defense of usury against such mortgage, and thus obtain an interest in the land which the mortgagor never agreed or intended to transfer to him."

In the case now under review it is obvious that the court did not intend that the purchaser at the referee's sale should take the premises relieved of all incumbrances in the way of taxes, and, if the plaintiffs bought them subject to such incumbrances, and at a price which was unquestionably affected thereby, there certainly would be no justice in permitting them, upon discovering that the taxes subject to which they had purchased were invalid, to transfer money from the treasury of the city and county to their own pockets; and that is practically what it would amount to if their contention is to be sustained. The cases to which we have referred are but types of many more recent ones, in all of which the doctrine is reiterated that one who holds real estate under a deed which, by its terms, is subject to a prior mortgage, is estopped from questioning the consideration or validity of that mortgage. Freeman v. Auld, 44 N. Y. 50; Ritter v. Phillips, 53 N. Y. 586; Parkinson v. Sherman, 74 N. Y. 88; McConihe v. Fales, 107 N. Y. 404, 14 N. E. 285; Beebe v. Power Co., 3 App. Div. 334, 38 N. Y. Supp. 395. In some of these cases it is true that the grantee not only took his title subject to, but actually assumed the payment of, an invalid incumbrance. We do not see, however, that this in any way affects the question we are considering; for in all the cases the principle of estoppel is applied upon the ground that the grantee, having in his purchase recognized the incumbrance as a valid and subsisting one, and bought subject thereto, and partly in consideration thereof, should thereafter in equity be forever foreclosed from questioning its validity. If this principle is applicable to the facts of this case,—as we think it is,—it necessarily defeats the plaintiffs' recovery, unless a different state of facts can be made to appear.

Judgment is therefore reversed, and new trial ordered, with costs to each of the appellants to abide event. All concur, except SPRING, J., who dissents.