## NEWTON v. EVERS et al.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1911.)

1. PROPERTY (§ 10*)—PRESUMPTION AS TO POSSESSION.

In the absence of evidence to the contrary, it was to be presumed that a grantee went into possession in pursuance of his deed.

[Ed. Note.—For other cases, see Property, Dec. Dig. § 10.*]

2. MORTGAGES (§ 275*) — TRANSFER OF PROPERTY — RIGHT TO CONTEST MORTGAGE.

Grantees, who assumed and agreed to pay a mortgage given by a predecessor in title, are estopped from attacking the validity of the mortgage on the ground that the mortgagor never had title.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 772–781; Dec. Dig. § 275.*]

3. MORTGAGES (§ 275*)—TRANSFER OF MORTGAGED PROPERTY—BONA FIDE PURCHASERS.

After B. had purchased property from W. for $1,500, giving a purchase-money mortgage and paying $500 in cash, he was adjudged a lunatic; it being found that the lunacy began prior to such transaction. V. was appointed committee, and before the adjudication was determined deeded the property to B.'s grantor, who discharged the mortgage for $1,000 and gave a mortgage to V. as committee for $500, which he subsequently paid; the transaction being intended to undo what had been done between W. and B. Thereafter W. conveyed the property, and a grantee in a chain of conveyances gave a purchase-money mortgage for $1,500. Each grantee thereafter assumed and agreed to pay the mortgage as part of the purchase price until the property was finally conveyed by warranty deed without reference to the mortgage, and then by quitclaim deed to F. F., a married woman, was represented by her husband as her attorney, and he knew the history of the line of conveyances and the mortgages. Subsequently B. was adjudged to be sane, and, V. being required to account, the $500 received from W. was paid to B., who thereafter quitclaimed to F. There was no consideration for the conveyance to F. Held, that the assignee of the purchase-money mortgage was entitled to foreclose the same; B. having ratified the transaction between V. and W., and F. not being a bona fide purchaser.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 275.*]

McLennan, P. J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Equity Term, Erie County.

Action by George M. Newton, as administrator of the Estate of Elizabeth Newton, deceased, against Jesse Evers and others. From a judgment for defendants (68 Misc. Rep. 354, 123 N. Y. Supp. 1009), plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

W. S. Thrasher and J. L. Hurlbert, for appellant.

Frank C. Ferguson, for respondents Kruse and Ferguson.

D. N. McNaughtan, for respondent McKenzie.

SPRING, J. This action is to foreclose a mortgage. On the 17th of September, 1884, one Woodward conveyed to William Blakely about 27 acres of land in the town of Evans, in Erie county, for the consideration of $1,500. He took back a purchase-money mortgage for $1,000, and Blakely paid him $500 in cash. In the fall of 1885 lunacy proceedings were commenced, and Blakely was adjudged a lunatic September 24th of that year; and the jury by their inquisition found that the lunacy commenced prior to the delivery of the deed mentioned. John Vellum was appointed committee of the person and estate of the lunatic. On the 16th day of September, 1885, and before the adjudication was determined, Vellum executed a deed purporting to be made by him as committee to Woodward of the premises mentioned. Woodward discharged the mortgage for $1,000, which had been given to him by Blakely and executed a mortgage to Vellum as committee, for the sum of $500, which he subsequently paid. This transaction, as the court has found, was with the evident purpose of undoing what had been done by the deed from Woodward to Blakely. The court further finds:

"That thereupon, as a part of this attempt to undo what had been done, the said Woodward satisfied the mortgage of $1,000 which had been given to him by Blakely and, to secure the payment of the $500 in purchase money which Blakely had paid him, executed and delivered to the committee a mortgage on the property for $500."

Vellum, after his appointment as committee, reacknowledged the deed purporting to be made in that capacity. Of course, Vellum exceeded his authority in executing this deed and in carrying out this transaction, but it will not be disregarded by a court of equity when called upon to adjust the rights of the parties. Woodward supposed he was revested with the title, and he so acted. On September 16, 1886, he conveyed to Louisa J. Kinner these premises, which deed was recorded in October. August 5, 1887, Mrs. Kinner and her husband conveyed to Jesse Evers, who gave back a purchase-money mortgage for $1,500, and that is the mortgage which the plaintiff, as owner by assignment, has attempted to foreclose; and a bond accompanied this mortgage.

Conveyances were made in the line from Kinner until the title became vested, July 21, 1888, in John Henry and Helena Kruse; each grantee assuming and agreeing to pay the bond and mortgage as part of the purchase price. The Kruses conveyed to Drefs and Cook by

warranty deed without reference to the mortgage in suit, and Drefs and Cook in August, 1889, conveyed by quitclaim deed, with covenants against grantor, to Julia E. Ferguson, the present respondent. and there was no consideration for this deed, which was recorded.

This business was transacted for Mrs. Ferguson by her husband as her attorney, and he stipulated on the trial that he acted for her in all these transactions. Mr. Ferguson was familiar with the history of the line of conveyances and the mortgages above described.

Drefs, in narrating the transaction with Ferguson—and his evidence is undisputed—testified:

"Ferguson said, 'Although you have a warranty deed to the property, you have not title, because there is a crazy man in that.' He says that he could not give title to that property, said there is also a mortgage of $1,500 against it, and says you cannot sell it or do anything with it. 'Well,' says I, 'Mr. Ferguson, what would you suggest'? He said: 'I do not know, I will look into it.' I says: 'Take your own time. Here are the papers. Look into it and see what you will do with it.' Ferguson sent word and says, 'We have got that deed ready of the property, if you want to give it.' I said we will sign it. We went down and signed the deed. He did not tell us who the crazy man was. He did not tell us about the mortgage. Ferguson said there was a mortgage of $1,500. He said the man who loaned the money should have known that we ought not to have loaned the money, said something about title not right, as we did not care to hold the property we made him a present of it. Ferguson did not tell us who we were dealing with. We understood it was Ferguson himself. We thought so because of the remarks made that day when we went to Hubbell's office to take the acknowledgment. Ferguson said, 'My clients are going to make me a present of this piece of property.' I did not understand that the conveyance was to Ferguson's wife until after this lawsuit was started. I did not know that before to-day." .

Blakely on April 28, 1891, was adjudged to be sane, and Vellum discharged as committee. Mr. Ferguson was attorney in the proceeding in procuring the order adjudging Blakely to be restored to sanity. Vellum was required to account as committee of Blakely. Mr. Ferguson represented the latter, and the balance in the hands of the committee was the sum of $537.51, which included the $500 he received from Woodward, and the money was paid to Blakely or his attorney as the order, dated June 3, 1891, directed.

By quitclaim deed, dated May 4, 1891, a week after he was declared to be sane, Blakely conveyed to Mrs. Ferguson. There was no consideration for the deed from Drefs and Cook to Mrs. Ferguson, and the evidence does not disclose any in that given by Blakely to her, and apparently none is recited in the conveyance. The evidence does not show directly that all the parties to these deeds went into possession of the property, but it does not show to the contrary; and we therefore have the right to assume each grantee went into possession in pursuance of his deed. Parkinson, Spec. Gdn., v. Sherman, 74 N. Y. 88, 30 Am. Rep. 268.

The interest was paid on the mortgage until 1889, but none has been paid since Mrs. Ferguson obtained title to the property.

The plaintiff commenced this action to foreclose the mortgage, and the respondent Mrs. Ferguson defended on the ground that the mortgage was invalid because Woodward obtained no title by the deed from Vellum. It is true that Vellum could not vest Woodward with

the legal title by the unauthorized conveyance which he made. Woodward, however, did obtain what purported to be a conveyance and went into possession of the property. He and Vellum supposed that by accepting the deed, discharging the mortgage, etc., the rights of the parties were exactly the same as if no conveyance had been made by Woodward to Blakely. No matter as to the validity of this conveyance to Woodward. Each of the grantees after the mortgage was given, down to and including the Kruses,. assumed and agreed to pay this mortgage; and they are estopped from attacking the validity upon which their own title depended. Parkinson v. Sherman, 74 N. Y. 88, 30 Am. Rep. 268; Cottle v. County of Erie, 57 App. Div. 443, 448, et seq., 67 N. Y. Supp. 996; Hartley v. Harrison, 24 N. Y. 170; Remington & Sons P. & P. Co. v. Caswell, 126 App. Div. 142, 150, 110 N. Y. Supp. 556.

The title which Mrs. Ferguson obtained from Drefs and Cook was in this same line of conveyances, and she is estopped, so far as she depends upon that conveyance, from repudiating the source of title in Woodward.

Blakely ratified the transaction between Vellum and Woodward. The only money which Blakely parted with when he purchased the property of Woodward was the sum of $500. He gave back a mortgage, which was discharged. Vellum retained in his custody, as committee, the $500, which were paid to him by Woodward for the purpose of squaring matters with Blakely or his committee. The payment of the $500 put Blakely in precisely the same situation as if he had never obtained the deed from Woodward. The committee accounted for this money and paid it over to Blakely after he was restored to sanity. Blakely could not receive this money and then disclaim the validity of the title which Woodward held. If he sought to repudiate the unauthorized conveyance of Vellum, who assumed to act for him, to Woodward, he must restore the $500, which he had received. He could not at the same time successfully assail the title and still keep the fruits of it.

If the title was in Blakely when he conveyed to Mrs. Ferguson, he must have held it subject to the lien of the consideration which he agreed to pay for it, and that is now represented by the mortgage in suit. With his mortgage of $1,000 canceled without payment, and the $500 returned to him, he held the title without having paid anything for the land or without performing his agreement with Woodward. He chose, instead of retaining the premises subject to this lien, to ratify the transaction between Vellum and Woodward by accepting back the money which he had paid.

I think from the evidence in this case that Mrs. Ferguson is in no better situation to repudiate the deed to Woodward than is Blakely. In all these proceedings Mr. Ferguson participated. He knew of the line of conveyances, of the giving of the mortgage actually, as well as the presumptive knowledge which came from the recording of the conveyances containing the assumption clause. He knew that the $500 was paid to Blakely and knew that it included the money from Woodward to the committee.

The court, at the request of the plaintiff's counsel, found as follows:

"Twenty-fourth. That in all the transactions in connection with said lunacy proceeding, or the proceedings to declare said Blakely again sane and restore him to his property, said Frank C. Ferguson conducted said proceeding and took said deed from Blakely to his wife with the full and complete knowledge on his part of the facts concerning this mortgage, its existence, that it was unpaid, and with full and complete knowledge on his part of the defect of the deed from Vellum, as committee, etc., to said Woodward, and with full knowledge and understanding on his part of all the facts before found relating thereto. That in all such proceedings and in all he did he was the agent of the defendant Julia E. Ferguson, and stipulates on this trial that she should be charged with notice of every fact within his knowledge. Therefore the defendant Julia E. Ferguson had full knowledge of all the facts at the time when she received from Blakely the deed and conveyance before described."

Mrs. Ferguson therefore is not an innocent purchaser. In the first place, she acquired her title with full knowledge of the plaintiff's mortgage. In the second place, there is no evidence in the case to show that she ever paid anything for this property. Ferguson did not testify, and there is no proof whatever that indicates she parted with anything when she obtained this title.

The judgment should be reversed.

Judgment reversed on the law and facts, and new trial ordered, with costs to the appellant to abide event. All concur, except McLENNAN, P. J., who dissents on opinion of court at Special Term.