GRAHAM v. HEALY.

(Supreme Court, Appellate Division, First Department. December 6, 1912.)

1. AUCTIONS AND AUCTIONEERS (§ 8*)—RIGHTS AND LIABILITIES OF BUYER.

   An auctioneer offered for sale real estate by plots, and invited bids on the basis of a single lot, on the condition that the bidder should take all of the lots in the plot at the rate of the bid. A bidder, without inquiry as to the terms, on hearing the auctioneer calling out "125 feet by 200 feet on H. avenue for $195," made a higher bid and the property was struck off to her. Thereafter she was the successful bidder for other lots, and she gave to the auctioneer's clerk $1,000 as the partial payment required. She subsequently insisted that she assumed that her bids were for the plots, and not for each lot therein, and she refused to purchase. There was no evidence of fraud inducing her to purchase. The evidence, uncontradicted, except by her testimony, showed that the auctioneer, at the time of sale, delivered to her a receipt showing the purchase by her of plots containing a specified number of lots, and the price figured on the basis that her bids were for the lots. *Held*, that equity would not release her from her contract, since her mistake, if any, resulted from her failure to ascertain the facts because of inexcusable neglect, and she could not recover the partial payment made.

   [Ed. Note.—For other cases, see Auctions and Auctioneers, Cent. Dig. §§ 25–40; Dec. Dig. § 8.*]

―――――

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Frauds, Statute of (§ 138*)—Oral Contract for Sale of Real Estate—Recovery of Partial Payment.

    A purchaser of real estate under a parol contract, void within the statute of frauds (Real Property Law [Consol. Laws 1909, c. 50] § 259), may not recover a partial payment, unless the vendor repudiates the contract or is unable or unwilling to perform, and where the purchaser did not tender performance, or demand performance by the vendor, who at the time fixed for the performance was ready and willing to perform, and so remained for a reasonable time, the partial payment was forfeited.

    [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 327–333; Dec. Dig. § 138.*]

Appeal from Special Term, New York County.

Action by Theresa C. Graham against Edmund J. Healy. From a judgment for plaintiff, entered pursuant to a decision after a trial, defendant appeals. Reversed, and judgment entered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Adam K. Stricker, of New York City (James J. Franc and Frederick F. Neuman, both of New York City, on the brief), for appellant.

William A. McQuaid, of New York City, for respondent.

LAUGHLIN, J. This action was commenced on the 6th day of April, 1904, to have it adjudged that a sale of certain real estate by the defendant to the plaintiff on the 19th day of August, 1899, be set aside and declared void, and for the recovery of the sum of $1,000 delivered by the plaintiff to the defendant at the time of the purchase to cover 10 per cent. of the purchase price. The plaintiff alleges, in substance, that the defendant advertised a sale at public auction of six plots of land, consisting of 52 city lots, at Far Rockaway, on the 19th day of August, 1899; that the sale was conducted by a licensed auctioneer; that plaintiff bid for each of the six plots, and that they were all struck off to her; that for one of the plots, containing 12 lots, she bid $205, and for two other parcels, each containing 16 lots, she bid $200 for each parcel, consisting of two plots, and that for a fourth, containing eight lots, she bid $205, making $810 in all; that she was requested by the auctioneer's clerk to make a deposit of 10 per centum of the amount of her bids, and that she delivered to him a $1,000 bill, at the same time stating that she wished to make a deposit of $100, on account of her bids; that said clerk well knew that the plaintiff supposed and understood that her bids were received as bids on the six plots, and made the deposit under a misapprehension and mistake, and on a void contract, and that he received and retained it with intent to deceive and defraud her, stating that he had no change, and that she could get the change from the defendant; that immediately after the sale she went to the defendant's house at Far Rockaway and demanded $900, being the balance of the $1,000 paid after deducting the $100 to be deposited to cover 10 per cent. of her bids, and that the defendant well knew and understood that she supposed that her bids were received for the six plots, and

that she had made the deposit under a misapprehension and mistake, and with intent to deceive and defraud her he concealed from her the fact that her bids had been received on *lots,* instead of *plots,* and said that he was unable to give her the change; that no note or memorandum in writing, stating the consideration for the sale of the premises to the plaintiff, was signed by the defendant or his duly authorized agent; that about two weeks later she again demanded the return of the $900, and that she did not learn until the 15th day of December, 1899, that her bids had been understood and received by the auctioneer as bids on lots, instead of on entire plots, and on learning that fact she demanded the return of the entire amount, which demand was refused.

The allegations of the complaint tending to show a mistake or misunderstanding with respect to the terms of the sale are put in issue, and it is alleged in the answer that the premises were sold by *plots,* but the bids were received at so much per *lot* for the entire *plot;* and that, as the plaintiff alleges, she purchased the entire six plots, but that the amount which she alleges was bid on each plot was the amount she bid on each lot in the four plots particularly designated in the complaint, and that the aggregate amount of her bids on all the lots in the six plots was $9,767.80, and that the amount she deposited was approximately 10 per centum of her bids, plus the auctioneer's fees, as required by the terms of the sale. It is further alleged in the answer that by the terms of sale the purchases were to be consummated at the office of the defendant's attorneys one month from the day of the sale, and that at that time the defendant was ready to perform, but the plaintiff requested an adjournment, which was granted, and on the adjourned day the plaintiff failed to complete her purchase.

The trial court found that there was no fraud or misrepresentation on the part of the defendant or the auctioneer; that the premises were offered for sale by plots, and "bids were called for upon said plots"; that the plaintiff bid $195 *per plot* for each of the six plots, without knowing or understanding that her bids were understood by the defendant to be bids *for each lot* in the plots, and that she was not aware that the defendant so claimed until after she paid the $1,000, when he refused to return the $900, and claimed that her bids were on the several lots in the respective plots, and that no contract or memorandum of sale was subscribed by the defendant, or by his duly authorized agent, or by the plaintiff, and that the contract rested wholly in parol. The judgment follows the decision, and sets aside and rescinds the plaintiff's bid and the sale of the plots of land to her, "and all the transactions of the parties in relation thereto," and dismisses the defendant's counterclaim, and awards judgment for the plaintiff for the sum of $1,000 and interest, together with costs and disbursements.

[1] The plaintiff testified that on the day of the auction, with a view to avoid seeing some friends who were to call where she was stopping, she, in company with her niece, took a Long Island train for Rockaway, intending to ride down and back, and that her attention was drawn to the auction sale of this land by an advertisement in

the New York Herald which she read on the train, and she determined to attend the sale, and for that purpose alighted from the train at Fàr Rockaway and hired a wagon and drove to the premises; that the sale had commenced before she arrived, and she heard "the auctioneer calling out 125 feet by 200 feet on Healy avenue and some other street for $195," and thinking that was very cheap she bid it in at that amount, and it was struck off to her; that after the bid for some other "lots" the auctioneer inquired the name of the bidder and requested a deposit of $100, and she gave him the name James J. Cassidy and delivered to the auctioneer's clerk a $1,000 bill, and that then she asked the driver who brought her from the station to get change for the bill, and that he returned and stated that the defendant would give her the change after the auction was over; that after the auction she and her niece accompanied the defendant to his house for the purpose of receiving the change, and on arriving there was informed that he could not change the bill, but that he would have change, and would give it to her in a few days; that two or three days later she went to Far Rockaway again, and asked defendant for her change, and was informed that he could not give it then, but would later; that she was not informed by any one that she was to receive the entire plot of 125 feet by 200 feet for her bid of $195, but that she assumed so from the fact that she heard the auctioneer shout out 125 feet by 200 feet on Healy avenue and some other street; that she did not bid $205 on any parcel, and that she supposed that she was only buying this one plot, for which she bid $195, and that when she found that it did not suit her she wanted her money back; that she purchased the property with a view to having her brother conduct "a roadhouse" thereon, and before the time for closing she found that the property—meaning the single plot, which she concedes was struck off to her—was so restricted that she would not be able to build as she desired, and that she found that a roadhouse would not do there, and that the premises were of no use to her brother for that purpose, and that is why she decided not to take them, and that at the time of closing she so informed the defendant, and, in effect, asked if he would not "please give" her back her money. The complaint was duly verified, and the allegations, to which reference has been made, are alleged to be true to the knowledge of the plaintiff.

The plaintiff's explanation for having the $1,000 bill was that she had two sisters who were dangerously ill, and she had the money to pay the doctors' bills and funeral expenses. Her niece was neither called nor accounted for, and several witnesses on the part of the defense testified that no one accompanied plaintiff to the auction or to defendant's house. The plaintiff is wholly uncorroborated, and her testimony, given more than 10 years after the auction and nearly 6 years after she verified her pleading, cannot be reconciled with her complaint. She has utterly failed to sustain the burden of proof required to entitle her to recover. If her testimony were to be accepted the judgment could not be sustained; for it only tends to show that, without making any inquiry with respect to the terms of sale, she arrived on the scene while the auction sale of this vacant land was

in progress, and immediately on hearing the dimensions of a particular plot given by the auctioneer she announced a bid, and, as no one bid higher, whatever the auctioneer had offered for sale was struck off to her. There is no evidence of fraud, and the only mistake, if any, was on her part; for her testimony is not inconsistent with the other evidence in the case, showing that the bids were invited on the basis of a single lot in the plots offered for sale, the bidder becoming obligated to take all the lots in the plot at the rate of his bid. If the plaintiff did not know the terms of sale, it was through no fault of the defendant or of the auctioneer, and she might have become informed, had she attended at the opening or inquired before bidding.

Moreover, her own admissions with respect to the reason she did not complete the sale and the payment of $1,000, when only 10 per cent. of her bid plus auctioneer's fees was required, tend to sustain the contention of the defendant that there was no mistake on her part with respect to what she was bidding on. The evidence, uncontroverted, except by plaintiff's testimony that she does not remember, shows that the auctioneer at the time of the sale filled out and caused to be delivered to plaintiff a blank receipt, such as are used by auctioneers, showing the purchase by her of the six plots, containing 52 lots, and the price figured on the basis that her bids were for the lots, making the total purchase price $9,900, to which $60 was added for auctioneer's fees, giving her credit for $1,000 paid in cash, leaving a balance of $8,960 owing. The defendant testified that, after plaintiff had paid the $1,000 and immediately after the sale, he talked with her with respect to closing it on the 15th of September, and asked her whether she wished to avail herself of one of the terms of sale, by giving back a mortgage for one-half of the purchase price, and she said that she would pay the entire amount in cash; that on the 15th day of September they met to close the title, and in the meantime he had had the deed drawn in her name by her direction and executed, and was ready and able to perform, but that plaintiff's lawyer did not appear, and that he suggested that, if she did not want the land, he would give her back her money, as she received the lots at a very low valuation, but she said she wanted to take title and the closing was adjourned until the 19th of September; that on the 18th he sent her a telegram with reference to closing, in reply to which he received a letter from her as follows:

"Your telegram received. I would like you to send diagram of lots as you promised, and when I have them searched I will close matters with money immediately."

Plaintiff did not appear at the time and place to which the closing was adjourned, and defendant made reasonable efforts to obtain an interview with her after receiving said letter, but without success. She does not controvert this evidence, or claim that the negotiations with respect to closing were broken off on account of any misunderstanding with respect to the quantum of land or her bid. I am of opinion, therefore, that if a court of equity can and should release a party from a contract on proof of excusable mistake on his part, with

no mistake or fraud on the part of the other party thereto—a question upon which no opinion need be expressed at this time—the judgment cannot be sustained; for the preponderance of the evidence shows that if she made a mistake, or was under a misapprehension with respect to any material fact, her failure to ascertain the facts was owing to inexcusable neglect on her part.

[2] There is no force in the contention that the plaintiff is entitled to have the down payment returned on the ground that the contract rested in parol and was void within the statute of frauds. Section 224 of Real Property Law, being chapter 547, Laws of 1896, as it existed August 19, 1899, now section 259 of chapter 50, Consol. Laws. It is unnecessary to consider whether or not the auctioneer's receipt constituted a sufficient note or memorandum of the contract to sustain it, notwithstanding the objection that it was void under the statute of frauds. It has long been the settled law of the jurisdiction that a vendee cannot recover a payment made to apply on the purchase price of real estate under a parol contract which is void within the statute of frauds, unless the vendor has repudiated the contract or is unable or unwilling to perform. Collier v. Coates, 17 Barb. 471; Fleischman v. Plock, 19 Misc. Rep. 649, 44 N. Y. Supp. 413; Quinto v. Alexander, 123 App. Div. 1, 107 N. Y. Supp. 422; Hann v. Brettler, 50 Misc. Rep. 647, 98 N. Y. Supp. 607. See, also, Cooley v. Lobdell, 153 N. Y. 596, 47 N. E. 783. Here there was no tender of performance by plaintiff or demand that defendant perform. Moreover, the vendor was at the time fixed for performance ready and willing to perform, and so remained for a reasonable time. In the circumstances, it is quite clear, I think, that plaintiff has forfeited the down payment. There can be no doubt on the evidence that plaintiff parted with the $1,000 bill with the intention and on the understanding that it was *all* to be applied on her bid. The defendant waived his counterclaim, and we are not required to consider whether or not it was meritorious.

The judgment, therefore, in so far as it dismisses the counterclaim, should be affirmed, and, under our recent ruling in Bonnette v. Molloy, 138 N. Y. Supp. 67, findings numbered V, VII, VIII, IX, X, and XII, in so far as they are inconsistent with these views, should be reversed, and the judgment in all other respects should be reversed, with costs, and final judgment dismissing the complaint upon the merits, with costs, should be awarded in favor of defendant. All concur.

<hr />