### GOULD et al. v. HIRAM WALKER & SONS, Inc., et al.

### ARPS et al. v. SAME.

### No. 8415.

Circuit Court of Appeals, Seventh Circuit.
May 13, 1944.

Rehearing Denied June 8, 1944.

Harry Dale Morgan, Jay J. Alloy, John E. Carlson, Julian B. Venezky, John E. Cassidy, Herbig Younge, Clarence W. Heyl, Chester L. Anderson, Bartley & Younge, Cassidy, Sloan & Crutcher, Morgan & Morgan, Shurtleff & Niehaus, and Robert Day, all of Peoria, for appellants.

Eugene D. McLaughlin, of Peoria, Ill., Edward R. Dorr, of Cincinnati, Ohio (Hunter, Kavanagh & McLaughlin, of Peoria, Ill., and Gallagher, Dorr & Manley, of Cincinnati, Ohio, of counsel), for appellee Robert Gould.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

This controversy arose in this manner. A New York Company[1] bought a large quantity of whiskey from the Hiram Walker Company, and possessed warehouse receipts for some of it, and a contract to purchase, the balance of this stock. The New York Company sold "interests" in the whiskey to hundreds of tavern keepers, received down payments therefor, and issued to them what it called "whiskey warehouse certificates" to evidence such sales and such purchasers' interests. The New York Company became embarrassed financially and its assets were sold by the New York State Tax Commission in September, 1940. The sale was upon written notice.

Plaintiff, Gould, was notified of the impending sale by the manager of the New York Company and he attended and was the highest bidder. The sale was made to him and he paid $30,000 for the 1861 barrels so sold. The auctioneer read the notice of sale in plaintiff's presence. He asserts that it was not until after the sale that he learned of these alleged prior equities, and that he could not have ascertained their existence had he inquired of the Hiram Walker Co., the possessor of the liquor. He contends that the equity holders were guilty of negligence in not asserting their claims or notifying the possessor of the liquor of their rights thereto.

Plaintiff instituted this suit in March, 1941, against Hiram Walker Company to recover possession of the 1861 barrels of whiskey thus purchased at the auction sale. The Hiram Walker Company answered, and filed a counterclaim, in the nature of an interpleader, setting up the fact that it held the whiskey, to which two adverse claims were being made; that it did not know who was the rightful claimant and that it was ready to abide the decision of the court. It alleged the auction sale, and the fact that over two hundred persons had filed with it, claims of interest in the whiskey. An answer by one counter-defendant (a holder of a whiskey warehouse certificate) was filed and it was stipulated that it stand for all the remaining counter-defendants.

The real contest is between plaintiff (Gould) and the counter-defendants who assert their right to, or a lien on, said whiskey.

The evidence consisted of the oral testimony of plaintiff and the depositions of an attorney for the New York Tax Commission, and for one of the certificate holders, who attended the sale.

The trial court made findings of fact and conclusions of law. It found, *inter alia*:

"That at no time prior to the completion of Gould's purchase at said Warrant Agent's sale, or prior to Gould's notice to the Walker Companies of his purchase of said warehouse receipts and warrants, and their acceptance of him as the purchaser and owner thereof, did either the Walker Companies or the said Robert Gould have any notice or knowledge of any rights or claims of any of the Counter-Defendants herein, unless as a matter of law, the state-

---

[1] Pennsylvania Whiskey Distributing Co., later known as Kent Darby, Ltd.

ments contained in the Warrant Agent's Notice of Sale be held to be notice to Gould thereof."

"That (the N. Y. Company) * * * kept records in which were recorded the names and addresses of the inter-pleaded Counter-Defendants, and the fact that certificates had been issued to them by (the N. Y. Company) * * * and disclosed the payments which had been made by the Counter-Defendants on account thereof, but that at the time of the Warrant Agent's sale in Brooklyn, New York, those records were in the possession of the New York State Tax Commission in Albany, about 150 miles distant from the place of sale."

As conclusions of law it found:

"That the Warrant Agent's notice of sale did not constitute such a warning of possible claims of a nature, such as have been asserted by the Counter-Defendants herein, as to place upon a reasonable man any duty of making inquiry of any one other than the Walker Companies. * * *

"That Robert Gould, in purchasing the Hiram Walker Warehouse Receipts and Warrants at the Warrant Agent's sale, was an actual bona fide purchaser thereof for value and without notice of any claims of any of the Counter-Defendants.

"That the Counter-Defendants by their failure to ascertain whether negotiable warehouse receipts had been issued to evidence title to the whiskey in the Walker warehouses (which they thought they had purchased) or to ascertain who was the actual owner of said whiskey, and in failing to notify the parties having the physical possession of said whiskey, namely: the Walker Companies, of their claimed rights therein, prior to the Warrant Agent's sale, are estopped from asserting any claim equal to, or superior to, the right of Robert Gould.

"That the equities of this cause are with the said Robert Gould."

Important provisions of the notice of sale, the contract of sale, and the certificate of sale are set forth in the margin.[2]

The evidence was sharply contradictory on only one issue. It covered an affidavit by an attorney for a warehouse certificate holder which stated that he attended the sale and before the sale told the warrant officer of his client's interest, and was by him told "the sale would make no difference

---

[2] "State Tax Commission of the State of New York

"Warrant Agent's Terms of Sale
"Re: Kent-Darby, Ltd.

"To Whom It May Concern, Greetings:—

"1. By virtue of a warrant issued by the State Tax Commission of the State of New York, to me directed and delivered against the property of Kent-Darby, Ltd., I, the undersigned, Warrant Agent, do hereby offer for sale *all the right, title and interest of said company* in and to the following described property as set forth in a list annexed hereto and made part hereof * * *

"3. All descriptions and additional information concerning the property to be sold are not representations, but are merely statements for information of the bidders herein, and are not warranted or guaranteed by the undersigned. All sales are made 'as is.' No warranty as to the condition or the working order or capacity of any item, is made by the undersigned, nor as to the properties or serviceability of the merchandise sold.

"3A. All warehouse receipts, *contracts*, warrants, and other documents, and stock certificates, sold at this sale, *are* sold subject to all equities outstanding against them, including but not limited to, liens, claims, storage charges, mortgages, prior sales, variations or absence in quantity or quality of merchandise, * * * and any other equities or encumbrances whatsoever."

* * * * * * * *

"Lot A. Some 815 Warehouse Receipts, * * * Certificates are sold subject to all equities.

* * * * * * * *

"Lot C. A warrant or contract for 1367 barrels of Hiram Walker & Sons whiskey, in favor of Kent-Darby, Ltd., on which some $12,000 has been paid on account, and some $33,000 remains to be paid; subject to location in Peoria, Illinois and Lehigh Warehouse * * *

"All the foregoing to be sold subject to the terms of sale. * * *"

"Certificate of Sale.

"I, * * * Haff, a duly appointed warrant agent of the State Tax Commission * * * do hereby certify * * * I did * * * sell at public vendue unto * * * Robert Gould * * * *all the right, title and interest* of the said Judgment Debtor, Kent-Darby, Ltd., of which it was seized or possessed on the 13th day of September, 1940 * * *

* * * * * * * *

"Pursuant to the *above terms* (the first matter above quoted) the undersigned has purchased the items mentioned in schedule hereto annexed. * * *"

to my client's rights, because they were being sold subject to all outstanding claims and equities. Counsel was advised to take the matter up with whoever was the purchaser of the sale and try to arrange a release through him." Said attorney also stated he had talked with the manager of the New York Company, at the sale; that plaintiff was present at this conversation; that he stated his client's interest in the whiskey; and asked to have it released from the sale, and the manager replied it was out of his hands and he would have to take it up with the purchaser at the sale.

This evidence was denied by Gould, who testified orally. Since the trial court found that Gould was a bona fide purchaser, and without actual knowledge of these pre-existing equities of the warehouse certificate holders, the controversy narrowed itself down to the terms in the notice of sale and the actual terms of the sale as stated by the auctioneer. Both the notice and the auctioneer's statement of what he was going to sell, stated the whiskey was offered for sale "subject to all equities outstanding" and subject to "prior sales."

The effect of such words determines this appeal.

■ There are several persuasive reasons for holding, as a matter of law, that plaintiff took subject to the equities of the counter-defendants.

(1) The published notice and the auctioneer's announcement, both apprised the purchaser of the possible existence of superior equities or encumbrances. They expressly stated that only the interest of the New York Company was being transferred. The notice stated there would be a sale of "all the right, title and interest of the said Judgment Debtor"; and, again, "All * * * contracts * * * are sold subject to all equities outstanding against them, including but not limited to lien, * * *." A more restricted, guarded statement of what was being sold could hardly have been made. The notice also read, "All descriptions and additional information concerning the property to be sold are not representations, but are merely statements for information of the bidders herein, and are not warranted or guaranteed, * * * All sales are made 'as is.' No warranty as to the condition, or the working order or capacity of any item, is made * * *."

The announcement was read by the auctioneer in the plaintiff's presence, while he was about ten feet away. He testified he had read the terms of the sale and the announcement of the sale in the newspaper.

■ (2) The burden should be on the purchaser, where it is stated at the sale that no warranty is made, and that title is subject to all equities against the commodity, to investigate the condition of the property or title thereto, rather than on prior equity owners to search out the prospective bidders and warn them of their claims. A person buying at an auction, knowing that he is not receiving a guaranteed article or title has a duty to investigate to discover the precise status of the title he is buying and gauge his bid accordingly.[3] The only investigation which plaintiff seems to have made was as to the lack of a bank indorsement on the warehouse receipts. He made no inquiry of the tax warrant officer, or the senior attorney for the New York State Tax Commission, both of whom were at the sale, and who, the testimony disclosed, had either been approached by the attorney for a counter-defendant, or such defendants with a claim for release of the whiskey represented by their "certificates," or were in possession of the Company's books (at a place removed from the sale) which books reflected the purchase by each of these hundreds of tavern-keepers who had purchased some of the whiskey or made a down payment on an asserted sale. These counter-defendants, some of them, approached the state officials, and the manager of the company—the latter in the presence of plaintiff—and asked for the release of the whiskey which they had purchased.

(3) The attorney for one of the counter-defendants sought to apprise the officials of his client's claim and a release of his property, but was told the whiskey would be sold subject to his rights and he should consult the purchaser for a release. It is claimed that the certificate holders should have registered their claims with Hiram Walker Co. or taken possession of their property, which some of them had paid for in full, in order to protect their claims. But there is no evidence that the instant plaintiff made any attempt to contact Hiram Walker Co. or to find out the state of title of this property. He was not therefore misled by the failure of the counter-

---

[3] Plaintiff's bid was, according to proffered evidence, not more than a fraction of the value of the whiskey.

defendants to affirmatively act to protect their property. They, on the other hand, might well have been lulled into a sense of security by the notice and announcement that the property was to be sold subject to outstanding equities.

(4) This plaintiff knew of the practice of issuing whiskey certificates—he so testified:

"Q. Had you ever seen certificate of that character that had been issued in the trade before?

"A. Not of that character, no.

"Q. Of that general type. Have you seen certificates issued by a whiskey company which purchased either by contract or warehouse receipts from a distiller and sold out in general?

"A. Yes, I have.

"Q. You are familiar with that practice?

"A. · Yes.

"Q. And you knew about that practice in general before you were there at the sale, is that right? I am talking about the general practice in the whiskey business?

"A. Yes, there was some practice of that type."

At another point in the evidence he was asked,

"Did you at any time make any inquiry of any kind, either before or after the sale, as to whether or not there were any prior sales of this whiskey or the documents?

"A. *I did not.*"

As between the plaintiff and the counter-defendants,· the stronger equities lay with the latter and this without weighing the factor that the price at which the plaintiff purchased was extremely low according to the proffered testimony.

The cases are numerous but many must be distinguished because of difference in facts. We cite a few which approach the instant case in their fact situations. They are helpful to appellants. Graham v. Healy, 154 App.Div. 76, 138 N.Y.S. 611; Burling v. Brinn, 116 Misc. 130, 189 N.Y.S. 707; Navarette v. Travis-Ziegler Co., Mun.

Ct., 194 N.Y.S. 832; Alexander v. Sola, Sup., 185 N.Y.S. 869; Cottle v. Bd. of Supervisors, 57 App.Div. 443, 67 N.Y.S. 996; Lane v. Chantilly Corp., 251 N.Y. 435, 167 N.E. 578, 68 A.L.R. 653; Waples v. United States, 110 U.S. 630, 48 S.Ct. 225, 28 L.Ed. 272; Osterberg v. Union Trust Co., 93 U.S. 424, 23 L.Ed. 964; The Monte Allegre, 9 Wheat. 616, 22 U.S. 616, 6 L.Ed. 174; Hall v. McGehee, 5 Cir., 37 F.2d 854; Smith's Lessee v. McCann, 24 How. 398, 16 L.Ed. 714; Osterman v. Baldwin, 6 Wall. 116, 18 L.Ed. 730; Galveston, H. & H. R. Co. v. Cowdrey, 11 Wall. 459, 20 L.Ed. 199; see also Amer.Juris., "Auctions," Sec. 15, Sec. 46; Amer.Juris., "Judicial Sales," Secs. 167, 169, and Corpus Juris Secundum, Vol. 7, Auctions and Auctioneers, § 8, p. 1262.

We also cite cases from which appellee may derive comfort.[4]

Our conclusion is that appellee took title to the whiskey subject to claim of appellants, the so-called "counter-defendants."

The decree is reversed with directions to proceed in accordance with views expressed in this opinion.

KERNER, Circuit Judge (concurring).

The real question is whether the statements contained in the notice of sale constitute a warning of possible claims such as are asserted by the counter-defendants.

In sales of this description, a bidder is bound by the publicly proclaimed terms of the auction sale, Chandler v. Morey, 96 Ill. App. 278, affirmed 195 Ill. 596, 63 N.E. 512. He should not bid without ascertaining the terms upon which the property is being sold, Burling v. Brinn, 116 Misc. 130, 189 N.Y.S. 707, 709. There is no warranty of title. The quantity and quality of the title must be at the purchaser's risk. It is his privilege to be fully informed of the state of the title so that he may bid understandingly at the sale. Under the rule of caveat emptor it is incumbent upon the bidder, and not upon the officer conducting the sale, to determine the condition of the title, and if he bids, he does so with notice that he will take only whatever interest the execution debtor has in the property,

4 Hunn v. Lewis, 8 Cir., 25 F.2d 271; · Keefe v. Cropper, 196 Iowa 1179, 194 N. W. 305; Stevens Hardware Co. v. Bank of Byromville, 34 Ga.App. 268, 129 S.E. 172; Pepin v. Stricklin, 114 Cal.App. 32, 299 P. 557; McCoy v. Davis, 38 N.D. 328, 164 N.W. 951; Smith v. Miller, 296 Pa. 340, 145 A. 901; Equitable Loan Co. v. Lewman, 124 Ga. 190, 52 S.E. 599, 3 L. R.A.,N.S., 879; McNeil v. Tenth Nat. Bank, 46 N.Y. 325, 7 Am.Rep. 341; Commercial Nat. Bank v. Canal-Lousiana Co., 239 U.S. 520, 36 S.Ct. 194, 60 L.Ed. 417, Ann.Cas.1917E, 25.

Dorris v. Johnson, 363 Ill. 236, 2 N.E.2d 74.

The notice of sale expressly stated that the sale would be subject to all outstanding equities. Under such circumstances the plaintiff purchased precisely the interest which the judgment debtor had in the property sold.