Edgar F. Hazleton, S.
The successful bidder at a judicial sale of real property in the above estate seeks, by petition dated May 23, 1957, to be relieved from his bid because of alleged legal and equitable considerations hereinafter mentioned.
By order dated September 26, 1956 this court entered an order authorizing the sale at public auction of certain real estate owned by the above estate, including the parcel of property which is the subject of this application. The petition of the public administrator, verified March 23, 1956, seeking said order of sale, was served on counsel for the distributees of the decedent who died intestate. In accordance with the order directing the sale, the auctioneer published the prescribed notice of sale in designated newspapers and the sale was duly held on November 14, 1956. Petitioner was the successful bidder for parcel designated as No. 2 with a bid of $19,000. The map submitted on this application indicates that petitioner is the owner of other real estate in the vicinity of the auctioned real estate of the decedent. At the conclusion of the bidding petitioner, as such successful bidder, signed a memorandum containing the terms of sale and paid 10% of the gross bid. Of the eleven terms of sale set forth in said memorandum, items 3, 6, 7, 8 and 11 are pertinent to the within application by petitioner. These provide as follows:
“ 3. That said property is sold subject to any state of facts an accurate survey would disclose.
‘ ‘ 6. That the balance of the purchase money will be required to be paid to the Administrator within sixty (60) days after the date of sale.
“ 7. That the bidding will be kept open if the property is struck down and, in case any purchaser fails to comply with any of the conditions of sale, the property so struck down to him will again be put up for sale and such purchaser will be held *825 liable for any deficiency there may be between the sum for which the property shall be struck down upon the sale and that for which it shall be struck down upon the resale, and also for any costs or expense of such resale.
‘ ‘ 8. That the sale is made subject to the approval of the Surrogate of the County of Suffolk, under whose authorization it is being held. If the Surrogate shall not approve the sale, the money paid by the purchaser will be returned to him without interest, and neither party will be further liable to the other under the provisions of the terms of sale. * * *
“ 11. That any objections to title shall be delivered to the attorney for the Public Administrator on or before December 14, 1956. Should the purchaser fail to present the attorney for the Public Administrator with objections to title within the time hereinabove specified, then it shall be deemed that no objections to title exist and the closing shall take place as hereinabove stated. In the event there are objections taken as hereinabove specified, the Public Administrator shall have a reasonable time to clear said objections.”
Petitioner apparently failed to comply with the above item 11 of the conditions of sale and did not deliver any objections to title on or before December 14, 1956. The auctioneer’s sale was confirmed by order of the court dated December 3, 1956.
Attached to the memorandum of sale was a full legal description of parcel 2, together with a survey of the affected land. The concluding paragraphs of the legal description state:
“ Said boundaries including land under the water of Artist Lake and describing the fullest extent of the possible interest of Christian ICrabbe.
“ Said parcel comprising approximately 10.076 acres.”
The survey indicates the area of the property to be sold as 10.076 acres. One side of the survey also contains the following legend, explanatory of the boundary lines showing the extent of land under the lake: “Possible extent of the interest or rights of the ESTATE OE CHRISTIAN KRABBE.”
The southerly, easterly and westerly lines of these premises lie, as indicated by this survey, in the bed of Artist Lake and indicate that approximately 7% of the possible 10.076 acreage offered for sale were under water.
In his petition for relief, petitioner summarizes the bases of his grievances by the following allegations: Sometime after the sale petitioner ordered a title policy covering the auctioned premises but the title company refused to insure any land under the water of the lake or to insure the exact location of *826 the boundaries of the auctioned premises lying in the bed of the lake. He also ascertained that the surveyor who prepared the survey which was attached to the copy of the memorandum of sale would not guarantee the survey of this parcel as to boundaries. Petitioner also then allegedly discovered that an adjacent property owner claimed title to at least a substantial portion of the land under water included in the 10.076 acres and had obtained title insurance thereto. Petitioner also claims that slightly more than two and one-half acres of the approximately 10 acres sold comprise land not under water and that, as to this upland acreage, the Department of Public Works of the State of New York might condemn a substantial portion of such property in connection with proposed road widening.
The foregoing allegations, however, are set forth in petitioner’s petition of May 23, 1957 in general language with no precise dates alleged as to the time of various alleged facts and, where pertinent, the actual dates when petitioner first acquired knowledge of facts he now complains of. Notice of petitioner’s application was given only to the Public Administrator.
The court has the power under section 20 (subd. 6), sections 215 and 240 of the Surrogate’s Court Act to vacate, upon a proper showing and upon proper notice to interested parties, a prior order confirming a judicial sale. As a court of equity, this court has the general equitable power to relieve a successful bidder from his bid, if after balancing the equities involved and upon a consideration of all the relevant facts, it is persuaded that it would be inequitable to direct the successful bidder to specifically perform and complete his bid or to forfeit his deposit, although such facts might be insufficient to avoid an ordinary commercial sale of property. (15 Carmody-Wait on New York Practice, p. 439.)
In Lane v. Chantilly Corp. (251 N. Y. 435) our Court of Appeals indicated at page 438 that the historic rule of caveat emptor ‘‘ does not apply in all strictness to a purchaser at a judicial sale.” There a purchaser at a judicial foreclosure sale of improved property located at 640 Broadway, New York City, had executed with a Referee a contract dated April 20, 1928, whereunder the purchaser agreed to accept title to the auctioned premises “ subject to any state of facts which an accurate survey would show. ’ ’ Immediately after the sale the successful bidder obtained a survey and report from a title company. This report, which was dated May 5, 1928 indicated that there were encroachments of certain stone piers of the *827 building which projected one foot, eight inches onto the street and a portico which encroached two feet six inches on -the same street. The terms of sale did not mention any encroachments. It also appears from the record on appeal that an elevator in the premises broke down after the date of sale but prior to closing. The successful bidder attended a scheduled closing on May 21,1928, pointed out the encroachments, and the closing was adjourned without prejudice to the rights of all parties to June 4 for various reasons including the submission, of a final report by the title company. On the latter date the purchaser rejected the tendered title. A motion was made upon affidavits verified June 11, 1928 to compel the purchaser to accept title. The latter in turn by a cross petition verified June 12, 1928 sought to set aside the sale and to be relieved of his bid. Special Term granted the cross petition and, in the exercise of an informed discretion on the facts there presented, relieved the purchaser from his bid on the ground that title was unmarketable and further held that the mere fact of the signing of a contract by the purchaser under which he agreed to take title subject to such facts as a survey might show was not a sufficient bar to the granting of equitable relief to the purchaser upon the facts there presented. The Appellate Division affirmed, by a three to two vote (225 App. Div. 789, 790). It should be noted that there, due to the nature of the encroachments, they were ascertainable only by a survey and that no mention of any such possible encroachments had been made in connection with the sale. The Court of Appeals affirmed the action of Special Term mainly on the principle that its decision was within a wide discretion vested in the lower court. The court noted (p. 438) that “ The purchaser asks a favor of the court; he is not entitled to any relief as of right.” In laying down the philosophy applicable to the conduct of judicial sales and the equitable rights of purchasers thereat, the Court of Appeals stated at pages 437-438:
“ Perhaps, in this case, an individual seller might conscientiously and fairly have insisted upon the performance of a contract, made under similar circumstances, for a purchaser deals at arm’s length with an individual seller and may not look to the seller for protection or relief against his own blunders. The rule that a buyer must protect himself against undisclosed defects does not apply in all strictness to a purchaser at a judicial sale. He may feel some sense of security against hidden pitfalls, and be lulled into signing a contract with an officer of the court which he would not make with an individual without further investigation.
*828 ‘ ‘ Doubtless the referee in this case had no more information about encroachments than the purchaser. Nothing known was concealed, yet the fact remains that the buyer has entered into a contract which he would not have made if all the facts had been known. Conscience cannot always be guided by general rule. Each case must depend upon its own facts. Where there is room for difference of opinion there is room for the exercise of discretion. Though we might doubt whether good conscience demands that the purchaser be relieved of his contract, we cannot say in the circumstances of this ease the court might not in the exercise of its discretion grant such relief.”
While the Court of Appeals in its above-quoted language has enunciated broad equitable ground rules governing the conduct of judicial sales which enable a sensitive equity court to render substantial justice according to the equitable exigencies of a particular case, the court obviously did not intend to have judicial sales casually set aside. The exercise of any such power should be limited to such cases where, under a full showing of all the facts, a failure to grant equitable relief would work injustice or undue hardship. On grounds of public policy the efficacy and desirable finality of judicial sales make mandatory the upholding of such sales absent compelling equitable considerations. (14 Carmody-Wait on New York Practice, pp. 120, 121.) Bidders at judicial sales should not be lulled by extremely liberal judicial opinion into a belief that they are guaranteed a profit or that they may bid recklessly at any such sales, abandoning any obligation on their part to investigate to the extent available all relevant facts bearing on any prospective judicial sales, in the misguided notion that the courts will almost automatically relieve them of their obligation. (Long Acre Properties v. Grove Park Estates, 279 App. Div. 1036 [2d Dept.]; Gould v. Hiram Walker & Sons, 142 F. 2d 544 [7th Cir., 1944].)
Since the touchstone of decision under the doctrine of the Lane case (supra) is the pull of all of the equities, any applicant for equitable relief must show clearly that he is free of inequitable conduct and that he seeks such relief with “ clean hands ’ ’. In the event that a successful bidder knew or had reason to know of any infirmities in any proposed sale such knowledge might preclude equitable relief. (Scala v. Levensen, 95 N. Y. S. 2d 850.) An applicant for equitable relief should be prepared to prove to the court that he has utilized due diligence in checking all available facts prior to interposing a bid at a judicial sale. (Queens County Fed. Sav. & Loan *829 Assn. v. Bermer Const. Corp., 155 N. Y. S. 2d 195.) At a minimum, a purchaser, as a condition of equitable relief, must be prompt in seeking relief immediately after discovery of the pertinent facts or else be deemed to have waived such facts or to be estopped from raising such facts later. (Claflin v. Clark, 37 Hun 642 memorandum in 22 N. Y. Week. Dig. 137; Lockwood v. McGuire, 57 How. Prac. 266; 14 Carmody-Wait on New York Practice, p. 123; 2 A. L. R. 2d 211-215, 155-160.)
It is elementary that a purchaser may not, with knowledge of defects, or grounds for equitable relief, be less than prompt in ascertaining the same and asserting such defects. Any undue delay or speculation at the expense of the estate (Riggs v. Pursell, 66 N. Y. 193, 199) particularly in a fluctuating real estate market should in all good conscience bar relief.
In the context of the foregoing applicable legal and equitable principles the moving papers must be adjudged inadequate. The extent of the knowledge of the purchaser at or prior to the sale of all the facts now urged as grounds for relief has not been clearly delineated, nor the precise dates as of which any subsequent material facts came to his attention, nor any statement as to what defects, if any, petitioner raised pursuant to item 11 of the memorandum of sale nor any explanation of the delay in applying for relief from the date of sale on November 14, 1956 to the petition herein on May 23, 1957.
Furthermore, the application for release from the bid has been made only on notice to the public administrator, disregarding entirely the distributees of the decedent upon whom would fall the onus of any financial loss occasioned by a granting of the relief herein sought.
Accordingly the motion of the purchaser is denied without prejudice to renewal on more detailed papers and upon notice to all interested parties in this estate, including the distributees. In the event petitioner renews his application in conformity with this memorandum, the public administrator may file a cross petition for an order seeking specific performance or to forfeit petitioner’s deposit or to direct a re-sale of the premises pursuant to item 7 of the memorandum of sale, or upon such terms and conditions as might fully protect the interests of the estate. At such time the court will be enabled to make a complete disposition of this controversy. (Cf. Brodsky v. Finn, 163 F. 2d 379 [2d Cir.].)
Proceed accordingly.